**STATE of Iowa, Appellee,**

**v.**

**William Joel MOORE, Appellant.**

**No. 52651.**

Supreme Court of Iowa.

March 5, 1968.

Ben E. Kubby and John P. Roehrick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David A. Elderkin, Asst. Atty. Gen., and Ray Fenton, County Atty., for appellee.

SNELL, Justice.

Defendant has appealed from the judgment following a jury verdict of guilty of robbery as defined in sections 711.1 and 711.3, Code of Iowa.

Other than the identity of defendant as the man who committed the robbery much of the evidence appears without substantial controversy.

On January 21, 1967 the Adams Pharmacy in Des Moines was robbed. At the time Mr. Rex W. Kepford, an assistant manager, was in charge. He noticed a man near the candy counter. Mr. Kepford asked the supposed customer if he could help him. The customer said, "No, he was just looking." Mr. Kepford went to check out others at the cash register.

After the others had left the man approached Mr. Kepford at the cash register and asked for a small sack which was given to him. The man then told Mr. Kepford to fill the sack with the money from the cash register. Mr. Kepford complied. The man took the sack of money and left. The police were called and arrived in a short time.

Mr. Kepford testified that the man had one hand in his jacket pocket and Mr. Kepford thought he was armed. The point is of no importance here as there is no issue relative thereto and defendant was not charged with armed robbery.

Within a few minutes the police brought a man (not the defendant) into the pharmacy and asked Kepford to identify him, but "it wasn't the fellow." He was released.

Shortly after receiving the police report police officer Duquette saw defendant, who answered the description of the robber, walking along the street. The officer drove along side defendant, stopped his car and got out. He asked defendant to identify himself. Defendant had no identification. He was asked to write his name which he did. Defendant was then asked to sit in the back seat of the patrol car.

Officer Duquette called for assistance and when it arrived he stated to the other officers that he felt that this man was the hold-up man. The officers asked defendant if he would be willing to go back to the drugstore and talk to the store manager.

Defendant agreed to do so and went willingly.

On the way to the drugstore defendant was not placed under arrest and rode in the back seat. Officer Duquette testified that when they were driving to the drugstore he heard what reminded him of paper being rustled around in the defendant's boot and he thought that the defendant had placed something in his boot. Officer Duquette further testified that when the defendant stepped out of the car he could see down the boot and saw a large roll of money.

The officers and the defendant went into the drugstore. Kepford was asked if defendant was the robber. He said he "didn't think so."

Defendant was asked about a wad of money the officers saw in his boot. Defendant said he didn't know how much money was in the wad. He said, "A good friend of his had given him the money," but he "didn't remember who it was."

Defendant was asked to count the money and began doing so. During the counting of the money Mr. Kepford noticed a dollar bill with a corner torn out that appeared to be similar to one he had received from a customer shortly before the robbery. Defendant was placed under arrest, informed of his constitutional rights, taken to the police station and booked. He was again informed of his constitutional rights.

Following the arrest, two police officers went to an apartment near Fifth and Locust to verify defendant's story that he was staying there and had been to that apartment. When they arrived they were unable to locate anyone and so left and passed this information on to the detectives.

Two detectives who apparently knew who to look for from the names given them located Donna Reed in a nearby tavern. As a result of a conversation with her she accompanied the detectives to the apartment where she unlocked the door and allowed them to enter. While in the apartment with Donna Reed's permission the detectives picked up a small paper sack out of the waste paper basket in the kitchen and observed and took possession of a gray jacket and a dark colored pair of pants in the bedroom on top of several boxes of clothes.

No search warrant had been issued for the apartment. There was no consent to enter except from Donna Reed.

Prior to trial the defendant moved to suppress all evidence incident to the defendant's arrest and all evidence relative to the search of the apartment of Mrs. Jenkins and Donna Reed.

The nub of defendant's complaint involves his standing to object to a search of an apartment room that he was not actually occupying when consent to enter was given by a tenant in possession. The factual situation is important.

A Mrs. Doris Jenkins and a Donna Reed were occupying an apartment rented in the name of Mrs. Jenkins, but with both tenants' names appearing on the door and the tenants sharing equally in the payment of the rent. It appears without question these two ladies were the rightful occupants of the apartment and in possession thereof. Each had a key.

Donna Reed had moved out before trial herein and was not available as a witness.

Mrs. Jenkins testified that on January 21, 1967 she arrived back at her apartment at about 11 a. m. and found the defendant, whom she had known for several months, a suitcase and several boxes of clothes that she recognized as belonging to defendant. The defendant had been living at the Northwestern Hotel. She asked him what the clothes were doing in her apartment and defendant told her he had lost his room and did not have any place else to put them. She informed him "he couldn't stay there." She told him to have his clothes out that day. She testified that defendant left about 1 p. m. but came back at about 3 o'clock

and asked "if he could get his jacket out of his stuff as it was getting cold." He then left wearing the jacket and a pair of jeans. Mrs. Jenkins stated at about 3:30 defendant returned and asked her if he could clean up and change his clothes. He did so and left about 20 minutes later. At defendant's trial Mrs. Jenkins identified the clothes taken by the officers as defendant's.

Later in the evening of January 21 Mr. Kepford was taken to the police station and with no formal line-up, the defendant was brought in and identified by Mr. Kepford. Defendant was asked if he would put on the clothes which had been seized from the apartment; he did so without objection; he was not asked any questions.

The defendant was then indicted and tried. During the trial the evidence taken from the apartment was admitted into evidence over the objection of the defendant. The case was submitted to the jury. A verdict of guilty was returned. It is from this conviction that the appeal is taken.

I. At the close of the State's case and again at the close of all the evidence defendant moved for a directed verdict because of insufficient evidence to support a jury verdict of guilty.

Defendant testified in his own behalf. He denied having been in the drugstore. He denied having any part in the robbery. His timing of his visits to the ladies' apartment varied somewhat from that of Mrs. Jenkins. He told of coming back to the apartment, changing clothes and leaving again. He said he had taken his clothing to the apartment to get them laundered at the laundromat. He said, "I thought it would be all right." He said the money found in his boot had been given him by a friend. His testimony as to what happened and was said on the street and at the store did not vary materially from that of the police officers.

There is no claim that defendant at any time ever admitted guilt.

If the evidence offered by the State was admissible defendant's motion for a directed verdict were without merit.

II. As we said in State v. Brant, Iowa, 150 N.W.2d 621, 624, generally searches are proper when made under the authority of a validly-issued search warrant or when incident to a lawful arrest. Searches and seizures made with voluntary consent constitute an exception to the rule that search and seizure must rest on a warrant. See case cited. " * * * if peace officers are lawfully admitted to private premises, what they see once they are in, that is, what is in plain view, is not a search." loc.cit. 625. If without a search warrant and without an unlawful entry officers are not required to close their eyes and need not walk out and leave articles seen. loc.cit. 625. See State v. Peterson, Iowa, 155 N.W.2d 412, filed January 9, 1968.

In the case before us there was no search warrant. The search was subsequent to and not incident to the arrest.

The burden of demonstrating that evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence but where the prosecution relies upon consent to an otherwise illegal search and seizure it has the burden of proving by clear and convincing evidence that the consent was voluntary. State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, and State v. Polton, 259 Iowa 435, 143 N.W.2d 307.

The question is one of fact to be decided upon its own circumstances. State v. Shephard, supra, 255 Iowa loc. cit. 1223, 124 N.W.2d 712. See also State v. Collins, Iowa, 152 N.W.2d 612, 615.

In the case before us, as in State v. Shephard, supra, there are two questions. Was there consent to enter the apartment and, if so, may someone other than defendant give consent?

The evidence is undisputed that Donna Reed, who lived in the apartment and paid half the rent unlocked the door and admitted the officers. There was no forcible entry and no claim of coercion or even subterfuge. We think Donna Reed was authorized to admit the officers. As bearing on the question of consent see State v. Peterson, supra.

In State v. Shephard, supra, we said:

" * * * if the party who has possession or control of the premises and property voluntarily consents to a search, the right of privacy is not invaded and the fact the search may disclose evidence tending to incriminate an absent party who may have an equal right to possession or control does not affect the reasonableness or legality of the search. For a full discussion of the authority for another to consent to a search and seizure see anno.: 31 A.L.R.2d 1078." (255 Iowa loc. cit. 1227, 124 N.W.2d loc. cit. 717)

In the case at bar the officers went to the apartment to verify the story told by defendant. They were lawfully on the premises with permission of a person authorized to admit them. There was no illegal search and seizure. They did nothing prohibited by the constitution.

III. Most of the cases involving alleged illegal search and seizure do not present factual situations such as we have here.

■ There is a difference between having standing to challenge the admissibility of evidence seized and the merit in the objection.

Standing to object is not limited to an owner or tenant.

In Spinelli v. United States, 382 F.2d 871 (8th Circuit, 1967) the court analyzed the Federal Court decisions under rule 41(e) of the Federal Rules of Criminal Procedure.

The fighting issue involved in the Spinelli case was the sufficiency of the information

as to probable cause for the issuance of a warrant. The court said:

"A large number of questions on this appeal revolve around the search warrant used to uncover the incriminating evidence of gambling. Among these questions are: appellant's standing to question its validity, the sufficiency of the information before the issuing magistrate, the propriety of its execution, the failure to specify some of the evidence that was seized."

The defendant was not an owner nor the lessee of the apartment but had been using it as a base for his bookmaking and gambling activities. The factual situation was not comparable to the case before us and there was no question of consent to search. However, as to the right to object the court said:

"We believe Jones, Miguel, and Foster, clearly indicate that it is the right to use the premises that is a factor determinative of standing. If the defendant is legally occupying, or has been granted a right to occupy the premises, even though he is not physically present at the time of the search, then his privacy has been invaded by a search of these premises. As a person so aggrieved by the search he has a right to object, and to do so he need not allege his specific proprietary interest, i. e., owner, lessee, business invitee, etc. Nor is he required to take the stand to establish his particular interest."

In the case before us defendant cannot prevail because of what is said in Spinelli.

IV. The court's instructions to the jury are not challenged. We have reviewed the entire record including the transcript of the testimony. We find no reversible error.

The case is

Affirmed.

All Justices concur except RAWLINGS and BECKER, JJ., who concur in the result.