**STATE of Iowa, Appellee,**

**v.**

**Michael Alan FREESE, Appellant.**

**No. 53163.**

Supreme Court of Iowa.

April 8, 1969.

Scalise, Scism, Gentry & Brick, by Robert B. Scism, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Raymond A. Fenton, County Atty., for appellee.

SNELL, Justice.

Defendant has appealed from the judgment following a jury verdict of guilty of illegal 'possession of narcotic drugs, i. e. marijuana, in violation of section 204.2, Code of Iowa.

On appeal defendant claims reversible error in the admission of evidence obtained without a search warrant and the sufficiency of admissible evidence to convict. The problems will be considered together.

Miles Joseph Goodwin was the lessee and occupant of a small apartment. He and defendant had worked at the same place and were acquainted. Defendant needed a place to stay. Goodwin told defendant it was all right if he moved in with him. Defendant moved in and was there about two weeks. He paid $20 toward the rent.

There was testimony that defendant was planning a "pot party" in the apartment. Goodwin testified that defendant had borrowed and used a small medicine bottle, talked about its contents and asked Goodwin if he wanted to try some. "By trying some he meant smoke some. I said I am a baby to that stuff; that's the exact words." He also testified:

"I didn't see Mike Freese put that substance in there. He told me he put it in. * * *

"I went to Officer Stanley and told him there was marijuana in the apartment. I told him I'd heard there would be a party in the apartment. I heard this at the pancake house. I didn't give any advice to Officer Stanley as to where to go in the apartment. I did tell him what to look for. * * *

"On February 1, 1968, some police officers came to my apartment. They had a conversation with me in regard to searching the apartment. I gave my consent. Mr. Freese was there at the time. They went in and searched. I was not present. I was down in the patrol car. * * *

"I gave officers permission to enter my apartment. I was there when they entered the apartment just until the door was answered. I went down and waited in Officer Stanley's car. Stanley had radioed the other officers."

Defendant testifying in his own behalf told of his activities during the day of January 31, 1968. We quote from the record:

"I returned to the apartment between 11:00 and 12:00 sometime. I went directly to bed, on the floor. Shortly after I was awakened by a knock on the door. I asked who it was, and the man said 'Police Officers.'

"Q. Did you open the door? A. At that time, no. I asked again. I had just woke up, and he said 'Police Officers. We want to see you,' and then I opened up the door.

"Q. Did the police officers ask to come in? A. At that time, yes.

"I said they could come in. They did not advise me of the reason they were there at that time. About five minutes passed before they did. This was between 12:00 and 1:00, I don't know exactly, the morning of February 1. I observed the police searching my apartment. I asked them what they were looking for, I believe Sgt. Backstrom told me. What they found wasn't mine. I don't know whose envelopes or vial they are. I don't know personally what's in State Exhibit 1. I don't smoke marijuana or use it in any form. * * *

"I did not put that substance identified as marijuana in that vial. It is not a fact I was going to have a pot party. I never invited anyone up there to have a pot party. I did not invite Mr. Goodwin to smoke marijuana with me. I let the police in willingly. I never noticed the vial on the window sill. * * *"

Six police officers testified for the state. They testified as to consent to and entry into the apartment. They had no search warrant. The officers looked around. They saw and took possession of some green plant substance on the coffee table. Defendant was placed under arrest and advised of his constitutional rights. What this green plant substance was does not appear. Continuing the officers found a plastic jar in the bathroom window still containing a substance thought to be marijuana. The state chemist after analysis testified that the substance was marijuana. Further discussion of the testimony is unnecessary.

■ I. Standing to object to admissibility of evidence seized as a result of illegal search and seizure is not limited to an owner or tenant. However, there is a difference between having standing to challenge the admissibility of evidence seized and merit in the objection. Here defendant had standing to object but there was no merit in his objection. See State v. Moore, Iowa, 156 N.W.2d 890 and authorities cited therein.

■ II. The burden of demonstrating that evidence has been illegally procured normally devolves upon the accused in a motion to suppress such evidence but where the prosecution relies upon consent to an otherwise illegal search and seizure it has the burden of proving by clear and convincing evidence that the consent was voluntary. State v. Shephard, 255 Iowa 1218, 1222, 124 N.W.2d 712, and State v. Polton, 259 Iowa 435, 143 N.W.2d 307.

■ The question is one of fact to be decided upon its own circumstances. State v. Shephard, supra, loc. cit. 1223, 124 N.W. 2d 712; see also State v. Collins, Iowa, 152 N.W.2d 612, 615.

■ In this case, as in State v. Moore, supra, there are two questions. Was there consent to enter the apartment and, if so, may someone other than defendant give consent? As we did in Moore, we now hold that here there was no illegal search and seizure.

The evidence is undisputed that Miles Goodwin, who rented the apartment, gave his consent to an entrance and search of the apartment. The defendant himself admitted the officers, and allowed the search. There was no forcible entry.

Our holdings are in accord with the United States Court of Appeals for our circuit.

In Wright v. United States, 389 F.2d 996, 998, the United States Court of Appeals, Eighth Circuit, had this same question before it. We quote:

"This leads us to the critical legal issue which is whether a joint tenant or resident of an apartment has authority to consent to the entry and search thereof. This court and other courts have held that where there are multiple lawful residents of a premises, any one of such persons may give permission to enter and that if incriminating evidence is found, it may be used against all. In Drummond v. United States, supra, [350 F.2d 983] we cite supporting

authorities and summarize the applicable law as follows:

" 'One having equal authority over premises may authorize a search of them. [Citations]'

"We adhere to the position taken in the cases just cited and hold that the officers entered the apartment and took the evidence sought to be suppressed with the voluntary consent of Summers and that Summers had a lawful right to occupy and use the apartment and permit others to enter it.

"Defendant relies upon landlord and tenant cases such as Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828, and hotel clerk cases like Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. Such cases are readily distinguishable from joint occupancy cases like our present case for the reasons pointed out in Drummond, supra, and Maxwell v. Stephens, 8 Cir., 348 F.2d 325, 336–338.

"Defendant's contention that there can be no valid search without a warrant, absent an emergency situation, is refuted by United States v. Rabinowitz, 339 U.S. 56, 64, 66, 70 S.Ct. 430, 434, 435, 94 L.Ed. 653. In that case the Court, among other things, holds:

" 'Assuming that the officers had time to procure a search warrant, were they bound to do so? We think not, because the search was otherwise reasonable, as previously concluded. * * *

" 'The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' "

■ III. As stated supra, Division II, the question is one of fact to be decided upon its own circumstances. Here, officers were alerted that there was marijuana in an apartment. The lessee gave his permission to enter and search the apartment. The defendant admitted the police officers, and permitted them to search the apartment, after they had "explained the nature of our business there and asked if we could look around." There was no evidence the officers in any way entered the room by breaking or forcing their way into the apartment. Nothing improper appears.

■ IV. It is well settled that, once lawfully admitted, police officers do not need to close their eyes as to what is in plain view. As stated in State v. Moore, supra, "If without a search warrant and without an unlawful entry officers are not required to close their eyes and need not walk out and leave articles seen." See also State v. Peterson, Iowa, 155 N.W.2d 412.

In State v. Shephard, supra, this appears:

"* * * if the party who has possession or control of the premises and property voluntarily consents to a search, the right of privacy is not invaded and the fact the search may disclose evidence tending to incriminate an absent party who may have an equal right to possession or control does not affect the reasonableness or legality of the search. For a full discussion of the authority for another to consent to a search and seizure see anno: 31 A.L.R.2d 1078." (loc. cit. 1227 of 255 Iowa, loc. cit. 717 of 124 N.W.2d ) See also State v. Moore, supra.

Defendant's complaints are without merit.

The case is

Affirmed.

All Justices concur, except RAWLINGS, J., who dissents, and BECKER, J., who concurs in the result.