STATE of Iowa, Appellee,

v.

Philip Ray BIRKESTRAND, Appellant.

No. 57108.

Supreme Court of Iowa.

Feb. 18, 1976.

354

Jerald W. Kinnamon, Jon M. Kinnamon and R. Fred Dumbaugh, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins and Thomas Mann, Jr., Asst. Attys. Gen., Carl J. Goetz, Jr., County Atty., and Thomas M. Martin, Asst. County Atty., Iowa City, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and HARRIS, JJ.

RAWLINGS, Justice.

Defendant, Philip Ray Birkestrand, appeals from judgment on jury verdict finding him guilty of possessing marijuana with intent to deliver. We affirm.

November 29, 1971, Donald Strand, an Iowa City Detective Sergeant, executed a search warrant application supportive affidavit. It encompassed an eight month investigation of Birkestrand. The application proper was signed by five peace officers. A magistrate issued the requested warrant. Thus armed, Strand and his fellow officers promptly entered defendant's residence at 1112 Brookwood Drive in Iowa City on November 30th. It had been leased for occupancy by himself and two others. At time of the search a Mr. Tauber (cotenant) and Debbie Grout were present with the accused. A fourth person, Robert Hoy (another cotenant) later arrived.

The search started in the living room where a hashish pipe and some plant-like material were found under a couch cushion. In the northeast bedroom the police came upon a desk in which they found some bills, personal papers and a passport belonging to Birkestrand. In an adjoining closet the officers discovered two suitcases containing marijuana, LSD and hashish. After these findings Strand inquired as to whether the northeast bedroom was occupied by Birkestrand and he responded in the affirmative.

Upon a search of the kitchen the officers observed a dial-a-gram scale, commonly used by pharmacists and drug dealers, with a greenish-olive residue on and around it.

In a dining room table drawer were several nonpersonal items, a wallet containing $594, and Birkestrand's identification. He later requested the return of his money.

In brief, the officers discovered and seized (1) over 29 pounds of marijuana, some in 12 ounce compressed brick form, some in baggies, (2) some LSD and hashish; and (3) related paraphernalia.

November 30, 1971, return on the executed warrant was filed. (Code § 751.12).

Trial did not commence, however, until October 23, 1973, due in large part to an agreement with the county attorney under which Birkestrand was to act as an informant in certain specified circumstances. Under this compact, disposition of the above stated charge would depend upon the filing of charges against certain named persons. Determination as to compliance justifying dismissal of the charges against Birkestrand rested entirely in the prosecutor's discretion. March 2, 1973, proceedings against defendant were renewed.

In the interim defendant moved to suppress evidence obtained pursuant to the above noted search. Four days before trial, when the above motion came on for hearing, defendant also requested a continuance in order to obtain new counsel. Both motions were overruled.

After return of the guilty verdict, Robert W. Jansen, retained attorney for Birkestrand, was allowed to withdraw. Thereupon R. Fred Dumbaugh appeared as defense counsel. He then ineffectually moved for dismissal or alternatively a new trial.

January 3, 1974, defendant's newly retained attorney sought to prevent entry of judgment by filing an "objection to imposition of sentence and application for judgment of acquittal" and by amendment raised an issue as to claimed double punishment.

Other facts which pertain to the foregoing will be later considered as they relate to these issues here urged in support of a reversal: Did trial court err in (1) overruling defendant's motion to suppress and admitting in evidence fruits of the search over defendant's standing objection that such were unconstitutionally obtained because there existed no underlying probable cause for issuance of the warrant; (2) failing to inquire of defendant as to his reasons for requesting a continuance in order to obtain new counsel four days prior to trial; (3) overruling defendant's directed verdict motion which asserted the State failed to prove "intent to deliver" beyond a reasonable doubt; (4) sentencing defendant when he had already been sentenced in another criminal prosecution arising out of the same factual situation as the instant prosecution, thereby subjecting him to multiple punishments; (5) failing to ascertain whether defendant had complied with the agreement between him and the prosecutor whereby defendant was to act as an informer in exchange for dismissal or reduction of the charges pending against him?

These assignments will be considered in the order presented.

■ I. Probable cause exists for issuance of a search warrant if facts supplied to the issuing officer are sufficient in themselves to justify a reasonably cautious person to believe a crime has been or is being committed. See *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 564,

91 S.Ct. 1031, 1035, 28 L.Ed.2d 306 (1971); *State v. Everett,* 214 N.W.2d 214, 217–218 (Iowa 1974); *State v. Lynch,* 197 N.W.2d 186, 191 (Iowa 1972).

For an extensive review of pertinent cases see *State v. Kraft,* 269 Md. 583, 307 A.2d 683, 685–698 (1973).

This court has also held validity of a search warrant is to be tested only upon information brought to attention of the issuing magistrate. See *State v. Everett,* 214 N.W.2d at 217; *State v. Lynch,* 197 N.W.2d at 191. See also *State v. Liesche,* 228 N.W.2d 44, 48 (Iowa 1975).

■ And, in order to suffice, claimed probable cause must rise above mere suspicion. See *State v. Shea,* 218 N.W.2d 610, 614 (Iowa 1974).

■ It still remains, however, the burden is upon one challenging evidential use of the products of a nonconsent search to prove they were illegally obtained. See *State v. Moore,* 261 Iowa 1100, 1105, 156 N.W.2d 890 (1968).

In light of the foregoing, this summarized analysis of Strand's affidavit in support of the warrant application is essential:

(1) Police investigation over an eight month period revealed defendant had been associating with persons under official observation for drug abuse. This assertion is based in part at least on defendant's known activities. *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637, 643 (1969), noted the danger of relying on an accusation based merely upon an individual's general reputation and afforded no weight to the "bald and unilluminating assertion" the defendant was "known to be an associate" of gamblers. Later, however in *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2081–2082, 29 L.Ed.2d 723 (1971), the court said:

"We cannot conclude that a policeman's knowledge of a suspect's reputation— something that policemen frequently know and a factor that impressed such a 'legal technician' as Mr. Justice Frank-

furter—is not a 'practical consideration of everyday life' upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip. To the extent that *Spinelli* prohibits the use of such probative information, it has no support in our prior cases, logic, or experience and we decline to apply it to preclude a magistrate from relying on a law enforcement officer's knowledge of a suspect's reputation."

See also *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960); *United States v. Guinn,* 454 F.2d 29, 34–35 (5th Cir. 1972), cert. denied, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972); cf. *State v. Shea,* 218 N.W.2d at 614.

(2) The name "Phil" and a phone number, along with those of several known drug abusers, were found on a list possessed by Walter Rapinchuck, subsequently convicted of drug abuse. Noticeably, Strand's affidavit did not enhance the probative value of this statement by identifying the phone number as that of defendant Philip Birkestrand and no such connection could be presumed by the magistrate.

■ (3) A "reliable informant reported he had seen drugs on April 13, 1971, at 2017½ So. Dubuque St. and "a white man" who lived there was "dealing in heroin, mescaline and LSD". That was defendant's place of abode at time of the report. The conclusory description of this informant as "reliable" would not be sufficient if alone employed to establish probable cause. See *State v. Valde,* 225 N.W.2d 313, 315 (Iowa 1975). But here the tip lends credence to information given by a citizen informer, a Culligan Soft Water Company employee, *infra.* See *State v. Nelson,* 234 N.W.2d 368, 373–374 (Iowa 1975), citing *State v. Drake,* 224 N.W.2d 476, 478–479 (Iowa 1974).

(4) September 22, 1971, defendant was living with Robert Hoy, known by the police to be a drug abuser. The basis for Hoy's reputation in the drug field is set out in detail. See *United States v. Harris, supra.*

(5) Strand's barren assertion "I received information * * *" that defendant and Hoy had entered into an agreement to sell cocaine should have been disregarded by the magistrate, but not solely because it represented opinion rather than fact. The affidavit discloses neither the source of this information nor any details which would establish its credibility. See *State v. Johnson*, 203 N.W.2d 126, 128 (Iowa 1972). Hearsay, even double or triple hearsay, may be sufficient for probable cause without extrinsic corroboration. See *United States v. McCoy*, 478 F.2d 176, 179 (10th Cir. 1973), cert. denied, 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62 (1973); *United States v. Kleve*, 465 F.2d 187, 192 (8th Cir. 1972); *State v. Everett*, 214 N.W.2d at 217; *State v. Dodson*, 195 N.W.2d 684, 685 (Iowa 1972). Here, however, reference to the agreement was vague and there is no adequate basis for crediting same.

(6) On a routine call to 1112 Brookwood Drive, a Culligan man (citizen informer) surprised defendant and another person sitting at a kitchen table covered with newspapers on which there were two small piles of white powder. See *State v. Nelson* and *State v. Drake*, both *supra*. Added to the foregoing is Strand's experience-based statement to the effect such powder could have been one of a number of drugs commonly placed on a flat surface for diluting or "cutting" preparatory to sale in units. See *State v. Lynch*, 197 N.W.2d at 190, cited approvingly in *State v. Boyd*, 224 N.W.2d 609, 613 (Iowa 1974).

(7) November 23 or 24, less than a week before the search warrant application was filed, Strand was told by an unidentified informer that he, within the past ten days, had observed heroin and marijuana on defendant's premises at 1112 Brookwood Drive in Iowa City. Strand was also advised as to the most likely places to there look for contraband. See generally *United States v. Harris*, 403 U.S. at 576–583, 91 S.Ct. at 2078–2081.

Admittedly, some of Strand's aforesaid conclusory representations would not alone suffice as a basis for issuance of a search warrant. But this is not determinative. Other statements set forth in the affidavit noted above, when viewed in totality, sufficed to establish probability of criminal activity by Birkestrand at and upon the designated premises. See *State v. Kraft*, 307 A.2d at 699.

The search warrant which here issued is not vulnerable to defendant's lack of basic probable cause attack.

II. Defendant's next contention is that in event reliability of informants or acceptability of Strand's personal knowledge be found, it still remains the affidavit-related information was "stale", i. e., too remote in time to support a probable cause determination.

Here the police informant may have last relayed information to Strand as late as November 23, 1971, or six days before issuance of the warrant. In this regard, however, the editor comments, 100 A.L.R.2d 525, 532:

"In some cases the affiant stated that he or his informant observed the alleged offense 'within' a certain period of time, such as 'within the last month.' Such a statement is sufficiently clear and definite, but the time indicated thereby may be considered as too remote to support a search warrant. The courts apparently take the view that for the purpose of testing remoteness, the statement must be treated as if the occurrence took place *on the most remote date within the period.*" (emphasis supplied).

Therefore, in evaluating the involved circumstances we shall proceed upon the premise Strand received the last report November 13th, or 16 days before application for the search warrant was submitted to the magistrate.

Touching on this subject is *Sgro v. United States*, 287 U.S. 206, 210–211, 53 S.Ct. 139, 140, 77 L.Ed. 260 (1932), where the court said:

"[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. *Whether the proof meets this test must be determined by the circumstances of each case.*" (emphasis supplied).

See also *Bastida v. Henderson,* 487 F.2d 860, 863–864 (5th Cir. 1973); *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir. 1972); *United States v. Harris,* 482 F.2d 1115, 1119 (3d Cir. 1973).

Further in this vein, a respectable array of authorities hold a reasonable time lapse does not preclude issuance of a search warrant where a continuing illegal activity is adequately portrayed to the magistrate. See *United States v. Harris,* 403 U.S. at 579, 91 S.Ct. at 2079–2080 (*footnote); *United States v. Steeves,* 525 F.2d 33, 37–38 (8th Cir. 1975); *United States v. Rahn,* 511 F.2d 290, 292–294 (10th Cir. 1975); *United States v. Harris,* 482 F.2d at 1119; *United States v. Guinn,* 454 F.2d at 36; *Durham v. United States,* 403 F.2d 190, 194 (9th Cir. · 1968); *Caffey v. Swenson,* 332 F.Supp. 624, 636 (W.D.Mo.1971); *Johnson v. State,* 14 Md. App. 721, 288 A.2d 622, 627–628 (1972); 68 Am.Jur.2d, Searches and Seizures, § 70 at 725; cf. *State v. Shea,* 218 N.W.2d at 614.

■ Here the affidavit revealed (1) a continuing illegal activity by defendant over more than a seven month period and (2) safety of a police informer necessitated the withholding of more specific and recent time-related events. At least a reasonable magistrate could so infer. See *State v. Hamilton,* 236 N.W.2d 325, 327–328 (Iowa 1975).

■ By a correlative attack Birkestrand invokes Code § 751.12 which mandates a return on the warrant within ten days from issuance. In essence, defendant appears to argue § 751.12 creates a presumption of "staleness" when more than ten days have elapsed between issuance and execution of the warrant. Therefore, by analogy, a like presumption should apply when there has

been a lapse of more than ten days between observation or report of suspected criminal conduct and issuance of a search warrant. For reasons set forth above, we find no merit in this argument.

· Authorities cited by defendant in support of his position have been examined and found to be inapposite or not persuasive.

Under existing circumstances we now hold the facts observed and information received, related in Strand's affidavit, were not so remote from time of application for issuance of the warrant as to invalidate it for lack of probable cause.

■ III. Four days prior to scheduled commencement of trial Birkestrand unsuccessfully moved for a continuance so he could secure a new attorney. It is now contended abuse of discretion, such as to constitute denial of due process, inhered in the refusal to grant the requested continuance because trial court failed to inquire as to defendant's reason for wishing to replace his attorney. Noticeably, Mr. Jansen was privately retained by Birkestrand, not appointed. Thus Standard 5.3, Standards Relating to Providing Defense Services, Approved Draft 1968, does not come into play.

In order to understand the problem presented it is essential the background be portrayed.

November 1971, Birkestrand was charged by county attorney's information. In December defendant engaged Mr. Jansen. After preliminary hearing and effectuation of the agreement by which Birkestrand pledged to serve as a police informant in specified instances, Mr. Jansen moved to suppress the seized contraband. October 19, 1973, this suppression motion came on for hearing. In course thereof, Mr. Jansen informed trial court to the effect he had been told, October 18th, that defendant desired to change counsel and planned to engage Mr. Dumbaugh. Subsequently, it developed the latter could not participate in trial at the scheduled time and by reason thereof suggested Mr. Jansen move for a

continuance. The latter did not deem this to be his "role" and so advised Mr. Dumbaugh.

In overruling Mr. Jansen's request for leave to withdraw from the case and attendant continuance motion, the presiding judge told Birkestrand trial would begin October 23, as scheduled, and in event defendant then had other counsel present, ready to proceed with hearing, Mr. Jansen would then be allowed to withdraw. Absent the appearance of another attorney, the case proceeded to trial.

After return of the guilty verdict Mr. Dumbaugh moved for a new trial, urging in part as a basis thereof, trial court's aforesaid failure to make inquiry regarding Birkestrand's reason for wanting to replace Mr. Jansen.

December 28, 1973, hearing was had on the new trial motion. In course thereof this colloquy occurred between Mr. Dumbaugh and defendant:

"A. There existed a definite lack of communication between my lawyer and me, probably due to lack of confidence that we both had in each other.

"Q. Had you, to any depth at all, at any time prior to [the suppression hearing], discussed the factual basis of the case with your counsel? A. About an hour's time was spent on it.

"Q. Had your counsel in any manner indicated to you a dissatisfaction in representing you and any desires he may have or might not have had in withdrawing from the case. A. Yes, previous to the trial my lawyer and I talked about—he told me that he didn't know whether he wanted to represent me or not in this case, and he in fact told my father that and me, too."

But these answers by Birkestrand, while being cross-examined, indicate defendant was in no hurry to remedy his claimed dissatisfaction with Mr. Jansen:

"Q. Now, did you at that time, two weeks prior to the trial, express anything to Mr. Jansen regarding any dissatisfaction with his counsel representation? A. Well, we had talked about it, you know, as far as our lack of confidence in each other and we both agreed that you know, things like—you know, weren't the way they used to be at first when I obtained him as a lawyer.

"Q. Now this occurred, you say, about two weeks before the trial, is that right? A. Yes.

"Q. Did you at this time dismiss him as your counsel? A. Well, like I say, I had just gotten back from traveling and I hadn't talked to him that much about the trial and he didn't really relate any information pertinent to me.

"Q. Did you at this time dismiss him as your counsel? A. I was thinking seriously about it.

"Q. Did you at this time dismiss him as your counsel? A. No.

"Q. I didn't hear your answer? A. Not as yet.

" * * *

"Q. When was the first time that you talked to Mr. Jansen and expressed your lack of confidence in his representation so that you were going to seek other representation? A. It was probably last June.

"Q. The last of June? A. Yeah, you know, six to seven months ago.

"Q. Did you thereafter seek other counsel? A. Like I said, I went out traveling, and at the time, you know, it had been a long time and I just felt that the need wouldn't arise. I thought he would take care of matters. I felt he was selling me down the river."

Where a motion for continuance is filed *without delay, alleging a cause not stemming from the movant's own fault or negligence,* the court must determine whether substantial justice will be more nearly obtained by granting the request. See *State v. Johnson,* 219 N.W.2d 690, 697 (Iowa 1974); *State v. Cowman,* 212 N.W.2d

420, 423 (Iowa 1973); Code § 780.2; Rules 182–183, Iowa R.Civ.P. The determination rests, however, in trial court's broad discretion. See *Ungar v. Sarafite,* 376 U.S. 575, 589–590, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921 (1964); *State v. Cowman, supra* This poses the question here to be resolved.

Defendant relies on this statement in *United States v. Seale,* 461 F.2d 345, 359 (7th Cir. 1972):

> "Since Seale had amply indicated dissatisfaction with counsel, the trial court was under a duty to inquire into the subject. As then Circuit Judge Burger explained in his concurring opinion in *Brown v. United States, supra* [105 U.S.App.D.C. 77, 264 F.2d 363 (D.C. Cir.) , cert. den. 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1958)], at 369, the entire court there agreed on the following proposition which he espoused:
>
> > " '[W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known.'
>
> "See *United States v. Mitchell,* 138 F.2d 831 (2d Cir. 1943), certiorari denied, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944); *United States v. Birrell,* 286 F.Supp. 885 (S.D.N.Y.1968). We are in accord. Since the trial judge was bound to look into the basis of Seale's dissatisfaction with his lawyers of record apart from the hospitalized Mr. Garry, failure to do so was an abuse of discretion."

In the abstract we find no reason to disagree with the above quote from *Seale.* It must be also conceded further inquiry by trial court as to Birkestrand's cause for wanting to secure other counsel would have been the better choice. But the foregoing does not resolve the problem before us.

As disclosed, *supra,* defendant realized he wanted to replace his retained attorney six or seven months before trial but failed to act. Then, for several months he "went out traveling". On return to Iowa City, two weeks before the scheduled trial date, Birkestrand expressed lack of confidence in Mr. Jansen, but again failed to take prompt corrective action.

Surely Mr. Jansen cannot be faulted for Birkestrand's breach of his agreement to act as an informer, considered *infra,* and consequent prosecution of the offenses charged.

Furthermore, our review of the record reveals Mr. Jansen at all times ably represented defendant. He was not denied effective assistance of counsel.

We therefore find no basis upon which to hold defendant was prejudiced by trial court's failure to inquire as to Birkestrand's continuance-related moment-of-trial effort to replace Mr. Jansen. See *United States v. Harris,* 501 F.2d 1, 5 (9th Cir. 1974).

It logically follows neither abuse of discretion nor denial of due process can be fastened upon the overruling of defendant's belated continuance motion. See *State v. McCray,* 231 N.W.2d 579, 581 (Iowa 1975). Birkestrand's instantly involved assignment is without merit.

IV. The question now posed is whether the State proved beyond a reasonable doubt Birkestrand possessed marijuana with intent to deliver. In contending otherwise, defendant maintains his new trial motion should have been sustained. We disagree.

No useful purpose will be served by repeating the relevant factual situation. Briefly stated, the officers found in Birkestrand's possession over 29 pounds of such controlled substance, some in 12 ounce brick form, some in small baggies. And Officer Strand testified sales thereof are often made in such form or container.

In *State v. Boyd,* 224 N.W.2d 609, 612 (Iowa 1974), we aptly observed:

"Where, as here, intent is an essential element of a crime, it may be proven by either direct or circumstantial evidence. [Citation]. We have also noted intent is ordinarily hard to prove except by circumstantial evidence. [Citation]. When the evidence is circumstantial alone, it must be entirely consistent with defendant's guilt and inconsistent with any rational theory of innocence. [Citation]. In considering sufficiency of the evidence, we view it in the light most favorable to the State and accord the evidence all reasonable inferences to support the verdict. [Citation]."

Also, as articulated, id. 224 N.W.2d at 613:

"However, there are other circumstances which, coupled with quantity, are sufficient. According to the testimony, the drug [33 lbs of marijuana] was wrapped and packaged in the manner usually associated with narcotics possessed for sale and delivery to others. Another telling fact is the presence of two scales located in close proximity to the marijuana by which it could be measured and weighed for packaging.

"When all the evidence is considered, together with the reasonable inferences it permits, the jury was properly allowed to determine if the marijuana possessed by defendant was held for purpose of delivery."

This alone is dispositive.

V. We now focus upon defendant's claim that he was unconstitutionally subjected to double punishment because the two charges against him, possession of marijuana with intent to deliver and possession of LSD with like intent, arose out of the same factual situation and involved the same statute.

Defendant was separately informed against on each of the above offenses. Contrary to Mr. Dumbaugh's contention on this appeal, however, the LSD charge was eventually (November 19, 1973) reduced to mere possession, to which defendant pled guilty, was forthwith sentenced, and was granted probation by Judge Honsell.*

At this point it will be recalled Birkestrand was tried October 23–25, 1973, on the marijuana possession with intent to deliver offense and found guilty. Pursuant to Mr. Dumbaugh's request, sentencing was delayed to December 14, 1973 and again on defendant's application to January 3, 1974.

In the interim, as aforesaid, defendant still being represented by Mr. Dumbaugh, entered a guilty plea to the reduced LSD charge, waived time for sentencing and judgment was instantly entered.

Thus we are confronted with (1) a guilty plea to an indictable misdemeanor and invited instantaneous judgment *after* trial and guilty verdict on the felony charge with a defense-initiated delay in sentencing and (2) at time fixed for sentencing on the prior felony verdict defendant voiced, for the first time, his double punishment claim by virtue of the judgment previously entered on his lesser offense guilty plea. More on this later.

In any event, defendant's assignment is entertained on the issue as presented, i. e., double punishment, not former jeopardy.

First on this subject, *Price v. Georgia,* 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300 (1970) declares:

"In *United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896), this Court observed: 'The Constitution of the United States, in the Fifth Amendment, declares, "nor shall any person be subject [for the same offense] to be twice put in jeopardy of life or limb."

* By reply brief, defendant contends he pled guilty to possession of LSD *with intent to deliver* [§ 204.401(1)] rather than "mere possession" thereof [§ 204.401(3)]. The transcript of said November 19, 1973, open court proceedings, obtained on order of this Court, shows otherwise.

The prohibition is not against being twice punished, but against being twice *put* in jeopardy * * *.' (Emphasis added.) The 'twice put in jeopardy' language of the Constitution thus relates to a potential, i. e., the risk that an accused for a second time will be convicted of the 'same offense' for which he was initially tried."

See also *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 1787, 44 L.Ed.2d 346 (1975); *State v. Gowins,* 211 N.W.2d 302, 303–304 (Iowa 1973).

■ By way of distinction, jeopardy attaches when the jury is sworn, or upon acceptance of a tendered guilty plea, and former jeopardy should be asserted at the earliest opportunity, usually before trial. See *Parker v. United States,* 507 F.2d 587, 588–589 (8th Cir. 1974); *State v. Tahash,* 278 Minn. 408, 154 N.W.2d 813, 817–818 (1967); 21 Am.Jur.2d, Criminal Law, §§ 165, 175–176; 22 C.J.S. Criminal Law §§ 241, 277; rule 12, Rules of Criminal Procedure for the United States District Courts (effective December 1, 1975); cf. *State v. Ritchison,* 223 N.W.2d 207, 214 (Iowa 1974). But see *State v. Reinhard,* 202 Iowa 168, 172–173, 209 N.W. 419 (1926).

On the other hand, double punishment usually attaches after return of a guilty verdict or acceptance of a guilty plea for the same offense upon which sentence has been previously entered. See *People v. Tideman,* 57 Cal.2d 574, 370 P.2d 1007, 1015, 21 Cal.Rptr. 207, 215 (1962).

This right against double punishment also flows from the Fifth Amendment. See *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872, 878 (1874). See also *Green v. United States,* 355 U.S. 184, 201–202, 78 S.Ct. 221, 231, 2 L.Ed.2d 199, dissenting opinion of Frankfurter, J. (1957); *People v. Savarese,* 1 Misc.2d 305, 114 N.Y.S.2d 816, 820–821 (1952); 24B C.J.S. Criminal Law § 1990 at 603. Incidentally Iowa, unlike some other states, has no statute specifically proscribing double punishment. But see art. I, § 12, Constitution of Iowa; Code §§ 777.20, 780.14, 789A.9.

As expressed in *Patton v. State of North Carolina,* 381 F.2d 636, 643–644 (4th Cir. 1967):

"Double jeopardy, rather than being a single doctrine, is actually comprised of three separate though related rules prohibiting (1) reprosecution for the same offense following acquittal, (2) reprosecution for the same offense following conviction, and (3) multiple punishment for the same offense."

We are here concerned only with the third branch of this tenet.

Understandably former jeopardy and double punishment are in many respects related, but they do not overlap when properly applied. See *People v. Tideman,* 57 Cal.2d 574, 370 P.2d at 1009, 21 Cal.Rptr. at 209.

■ Unquestionably, protection against double jeopardy is a personal privilege which may be waived. See *Kistner v. United States,* 332 F.2d 978, 980 (8th Cir. 1964); *Ballensky v. People,* 116 Colo. 34, 178 P.2d 433, 434–435 (1947); *State v. Davis,* 72 Idaho 115, 238 P.2d 450, 454–455 (1951); *State v. Tahash,* 154 N.W.2d at 817–818; 22 C.J.S. Criminal Law § 277.

It would also appear double punishment is a like waivable privilege. See *Stockton v. State,* 508 P.2d 663, 665 (Okl.Crim.1973). But see *State v. Gilroy,* 199 N.W.2d 63, 68 (Iowa 1972); *State v. White,* 219 N.W.2d 89, 93 (Minn.1974).

The above waiver doctrine is, in large part, here noted because it spotlights a troublesome aspect of this case not explained by defendant. In this regard he did not assert former jeopardy defense in connection with the (LSD) second charge to which a guilty plea was entered, apparently upon the assumption this was a *different* offense. Yet he here insists judgment entered on his misdemeanor guilty plea barred imposition of sentence on the previously tried felony (marijuana possession with intent to deliver) guilty verdict because such

constituted double punishment for the *same* offense. The internal inconsistency of defendant's stance is apparent. Moreover, it creates cause for some skepticism as to the procedural sequence of events above set forth. See *People v. Hartfield,* 11 Cal. App.3d 1073, 90 Cal.Rptr. 274, 279–280 (1970).

VI. Mindful of the foregoing, we must now determine whether the adjudication in connection with Birkestrand's indictable misdemeanor guilty plea constituted a judgment which precluded imposition of sentence on the prior felony trial guilty verdict.

Referring initially to the guilty plea it will be recalled defendant was charged with possessing LSD with intent to deliver, reduced to a *mere possession* charge.

Turning again to the felony trial proceeding, it will be remembered the charge was possession of marijuana *with intent to deliver* on which the guilty verdict was returned.

Bearing in mind the above charges both emanated from a single episode, the question now before us is whether pronouncement of sentence on both would constitute proscribed multiple punishment for the same offense.

■ In this regard it is today generally understood a conviction and sentence on one charge is a bar to judgment upon another only if the evidence required to support a conviction on one would suffice to warrant a conviction on the other. See *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), reaffirmed in *Gore v. United States,* 357 U.S. 386, 388, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1958). See also *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 1293, n. 17, 43 L.Ed.2d 616 (1975).

Stated otherwise, when a requisite element of one offense is not necessarily essential to a conviction for another, no double punishment attends judgment on both unless one is an included offense in the other. See *State v. Stewart,* 223 N.W.2d 250, 251 (Iowa 1974); *State v. Gowins,* 211 N.W.2d at 306; *State v. Cook,* 158 N.W.2d 26, 29–30 (Iowa 1968); *People v. Schroeder,* 264 Cal.App.2d 217, 70 Cal.Rptr. 491, 499 (1968). See also *State v. Burton,* 231 N.W.2d 577, 578 (Iowa 1975); *State v. Pospishel,* 218 N.W.2d 602, 603–604 (Iowa 1974); *State v. O'Kelly,* 211 N.W.2d 589, 593 (Iowa 1973), where this court squarely rejected the "episodic immunity" test in resolving a double jeopardy issue.

At first glance it would appear *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) might lend some aid to defendant's argument. But for reasons noted in *Gore v. United States,* 357 U.S. at 391, 78 S.Ct. at 1283–1284, *Bell* is here inapplicable.

■ As previously observed Birkestrand entered a guilty plea to mere possession of LSD in violation of Code § 204.401(3), a misdemeanor. Distinguishably, he was tried and found guilty of possessing marijuana *with intent to deliver* in violation of Code § 204.401(1), a felony. Clearly the former is not included in the latter. See *Melby v. State,* 70 Wis.2d 368, 234 N.W.2d 634, 640–641 (1975).

This view is supported by the fact that two different controlled substances are here involved. See *Normandale v. United States,* 201 F.2d 463, 464 (5th Cir. 1953); *People v. Barger,* 40 Cal.App.3d 662, 115 Cal.Rptr. 298, 304 (1974); *State v. Pope,* 192 Neb. 755, 224 N.W.2d 521, 529–531 (1974). And as stated in *Melby, supra,* 234 N.W.2d at 641: "Had one type [of substance] been analyzed and found to be of a lawful variety, that would not have made possession of the other lawful."

It is also self-evident the elements of proof required as to the lesser offense (possession of LSD) are not the same as those essential to a conviction of the greater offense (possession of marijuana *with intent to deliver,* discussed *supra* ).

■ Defendant's double punishment contention affords him no basis for a reversal.

■ VII. The final assignment here presented goes to trial court's alleged failure to inquire regarding Birkestrand's "compliance" with terms of the agreement between him and the county attorney. As heretofore stated, Birkestrand thereby agreed to act as an informer in exchange for a dismissal or reduction of charges pending against him. He now claims trial court erred in failing to ascertain, by hearing, whether he breached the agreement.

The above contention is totally devoid of substance.

*First,* the agreement was per se of no legal force or effect in this jurisdiction. See *State v. Kuchenreuther,* 218 N.W.2d 621, 623–624 (Iowa 1974), and citations.

*Second,* in course of proceedings on defendant's aforesaid post-verdict motions there was a hearing as to whether Birkestrand had fulfilled his promise and he then acknowledged an awareness of the fact that pending charges against him might not be dismissed. He also breached the agreement by admittedly having lied to State agents regarding one of the persons named against whom he was to serve as an informant.

*Third,* the final clause of said compact also stated, in effect, determination as to whether Birkestrand had measured up to his commitments rested entirely in the prosecutor's discretion.

*Fourth,* trial court doubted validity of the agreement but in any event found negating noncompliance therewith by defendant.

Further discussion is unnecessary.

AFFIRMED.