**STATE of Iowa, Appellee,**

v.

**Archie SIMMONS, Appellant.**

**No. 54484.**

Supreme Court of Iowa.

March 16, 1972.

Charles F. Glenn, West Des Moines, for appellant.

Richard Turner, Atty. Gen., and Richard N. Winders, Asst. Atty. Gen., for appellee.

MOORE, Chief Justice.

Defendant, Archie Simmons, appeals from conviction and sentence for illegal possession of explosive devices. He assigns two errors. We affirm.

About 11:00 p. m. May 13, 1970 patrolmen Richard Jones and Dean Stuhr were called to the scene of an armed robbery at Marie's Tap in the 1800 block of

Keosauqua Ave., Des Moines. They learned four black juveniles had committed the robbery. One of the subjects wore a dark raincoat.

Earlier that evening these officers went to the Mars Service Station in the 1000 block of Keosauqua Ave. to investigate an armed robbery. They learned two black males had committed the robbery. One of the subjects had an Afro type haircut, weighed 130–140 pounds, and was 5′ 6″– 5′ 7″ in height.

Approximately twenty minutes after the Marie's Tap robbery patrolmen Jones and Stuhr were traveling westward in the 1200 block of Forest Ave., Des Moines. They passed a car going the opposite direction with four black occupants. Excepting these two vehicles the street was empty of traffic. The officers turned to follow this vehicle, thinking the four black juvenile occupants had been involved in the armed robbery at Marie's Tap. Michael Benjamin Smith, known by both officers, was recognized as the left rear seat occupant. His description fit that of the described subject involved in the Mars Service Station robbery. Observation of the shoulder area of Smith and the other back seat occupant— defendant here—disclosed both wore dark coats.

After following the car a short distance the officers by spotlight motioned the driver to pull over. They then observed Smith bend over and thought he was shoving something, such as a gun or beer, under the front seat.

Upon stopping, the driver of the car, David Colton, exited and started walking back toward the police car. Experience of the officers had taught them such conduct was often an attempt to keep them from observing the contents and occupants of the vehicle. Stuhr motioned Colton to stop and immediately with Colton approached the left side of the stopped car. Jones remained just outside the squad car prepared to use, if necessary, the shotgun which he had taken from the police car.

With the aid of a flashlight Stuhr looked through the open car door and observed a brown paper bag under the front seat. Stuhr asked Colton what was in the paper bag. Colton said "nothing". Stuhr then asked him to pull it out. The paper bag contained a clear plastic "inner bag". Colton took hold of the plastic and pulled it part way out. He then stood up and said "there is nothing there". Stuhr remarked he wanted "the paper bag and everything". Colton reached in and pulled the bag out a bit further. He kept stating nothing was there. Stuhr then reached in and removed the bag and its contents from the car. He noted the bag contained blasting caps and placed it on top of the car. Officer Jones then advanced to the car and all occupants were ordered out, searched and later transported to the police station. The fourth juvenile occupant was Mary Lou Rhem.

Later when questioned at the police station Smith told officers he had seen several cases of dynamite the night before at the apartment of defendant Archie Simmons at 1240 12th Street, Des Moines. The apartment was about one block from the arrest scene. Smith described the apartment, its color and how to gain entrance to the building where the dynamite was located. The officers were aware a large quantity of blasting caps and dynamite had been stolen in Des Moines on May 4, 1970 from Quick Supply Company. After obtaining a search warrant from Municipal Court Judge Howard Brooks a search of Simmons' apartment revealed the dynamite described by Smith.

■ I. Defendant first contends the trial court erred denying his motion to suppress all evidence regarding the blasting caps. His conviction was for possession thereof. He argues they were not seized as incidental to a lawful arrest. He fails to recognize the real basis on which the blasting caps were taken from the vehicle.

■ It is now well established a police officer may make a valid search of a vehicle on a public highway without a warrant or

consent and prior to arrest where exigent circumstances and probable cause exist. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419; Anno. 26 L.Ed.2d 893, "Warrantless Search of Automobile". Our cases which recognize and apply the rule include State v. Baych, Iowa, 169 N.W.2d 578; State v. King, Iowa, 191 N.W.2d 650; State v. Hollingshead, Iowa, 191 N.W.2d 680. In State v. McReynolds, Iowa, 195 N.W.2d 102, filed February 25, 1972, we applied the rule where marijuana was taken from an airplane about to leave the Ottumwa airport. See also 21 Drake L.Rev. 252, "The Law of Search and Seizure".

Under the facts here we agree with the trial court's order denying suppression of the blasting caps evidence. Exigent circumstances and probable cause existed for the warrantless seizure of the caps. In so holding we find the actions of Smith and Colton added some weight to the probable cause issue. See People v. Superior Court of Yolo County, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449.

■ II. Defendant next asserts the trial court should have suppressed the dynamite evidence. He argues the dynamite found in his apartment was seized pursuant to a search warrant unlawfully issued. We do not agree.

On May 14, 1970 Des Moines Police Sergeant Ed Harlan executed and swore to an information for search warrant before Municipal Court Judge Howard W. Brooks. The information included allegations that Harlan for good reason and probable cause believed certain described dynamite had been stolen and was being kept by Archie Simmons in apartment 3, 1240 12th Street, Des Moines, Polk County and "subject had dynamite blasting caps in possession when arrested. Material is same make and brand taken in breaking and entering of the Quick Supply Co. of N.W. 66th Ave. and Toni Dr. on the night of May 4, 1970."

Judge Brooks took the sworn testimony of witnesses, listed their names and set out an abstract of testimony on the endorsement to the search warrant application. The abstract of the testimony of Sergeant Harlan was substantially the same as the above quoted statement made by Harlan in the application. The abstract of testimony of Sergeant R. Good states: "Received information from Michael B. Smith, 1316–10th St. that 3–4 cases of dynamite could be found at 1240 12th St. Apt. #3". The abstract of testimony of Smith states: "Michael Smith stated he saw three or four cases of dynamite in the apt. of Archie Simmons 1240–12th St. at approx. 4 PM May 13, 1970." The endorsement included a finding by Judge Brooks the information given the officer was reliable. Judge Brooks' testimony was substantially the same at the hearing on defendant's motion to suppress.

The guidelines and standards for issuance by a magistrate of a valid search warrant have been carefully considered in most jurisdictions. Frequently cited in this area of the law are Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. These and many other authorities are analyzed at length by this court in State v. Spier, Iowa, 173 N.W.2d 854. We there set out requirements for the issuance of a search warrant including this on page 862:

" * * * when a magistrate issues a search warrant based wholly or in part upon sworn testimony presented to him, then, (1) the name and address of every person so testifying and an abstract of the testimony of each such witness shall be endorsed on the application, and (2) if the basis for issuance of the warrant is supplied wholly or in part by an informant, the magistrate shall likewise endorse on the application only the identity of the peace officer to whom the

information was given, with an abstract of the factual showing made, under oath or affirmation, upon which the magistrate determined reliability of the informant."

The record discloses the standards and requirements for issuance of a valid search warrant of defendant's apartment were met by the magistrate. Defendant's second assigned error is without merit. We find no reversible error.

Affirmed.

All Justices concur.