**The STATE of Iowa, Appellee,**

**v.**

**Donald Francis SHEA, Appellant.**

**No. 56218.**

Supreme Court of Iowa.

May 22, 1974.

John W. Pieters, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Darby M. Coriden, Asst. Atty. Gen., and David Dutton, Co. Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

RAWLINGS, Justice.

Defendant Donald Francis Shea appeals from judgment entered on jury verdict finding him guilty of possession of con-

trolled substances with intent to deliver. We affirm.

Defendant was arrested absent a warrant. The same day he was charged by information with the above stated offense.

Shea later moved to suppress the arrest related seizure of materials from an automobile then occupied by himself and Donald Hines. No traffic violation was involved.

Thereafter hearing commenced on the suppression motion. Three witnesses appeared on behalf of the State.

Waterloo Police Detective Harry Helgesen testified he saw Hines, a white man, sitting alone in an automobile about 9:15 p. m., June 29, 1972, in "the North End" of Waterloo. This is described as a predominantly black neighborhood, known to police as an active drug traffic center. .

A check of the vehicle revealed it belonged to defendant Shea who had before been arrested by Helgesen. At that time defendant possessed hasish, LSD and marijuana.

Helgesen also then saw Terry Sallis, a known associate of drug pushers and users, talking with Hines.

The officer had further been previously advised that Shea was selling drugs to Nicky Gonzales.

While observing the above events Helgesen was told by an informant "the word was the white (Hines) was dealing in dope."

A few hours later, or about 1:45 a. m., June 30th, Helgesen saw Hines and defendant enter the Music Box, a tavern and known center for soft narcotics dealings, located in a predominantly white business area. Hines and defendant were later seen emerging from the tavern accompanied by Gonzales. Thereupon Hines and Shea hurried to the latter's automobile, then drove away. Gonzales also left in his car.

By police intercom Helgesen instructed patrolling officers Dolan and Ames to stop the Shea vehicle. This was done and a short time later Helgesen arrived at the "stop" site. A search of Hines and defendant revealed no drugs on their persons.

Helgesen then looked in the stopped vehicle and there readily observed what appeared to be marijuana roaches or butts.

The car was thereupon searched by Helgesen. He resultantly found and seized marijuana, LSD and some other pills. Hines and defendant were arrested.

Shea's motion to suppress the seized articles was overruled.

In course of trial officers Helgesen and Dolan testified substantially as above set forth.

The seized material was also then identified as Exhibits A to K inclusive.

Stephen Eck, chemist with the Iowa Criminalistics Laboratory, testified he analyzed the seized substances. In essence this is Eck's testimony, based on his findings:

*Exhibit A*: Two capsules in the form consistent with Sinequan marketed by Pfizer Laboratories. The witness did not know whether this was a controlled substance under Iowa law or a prescription drug.

*Exhibit B*: Two green and white capsules in a form consistent with the product Librium, but Eck did not know whether it was a prescription drug.

*Exhibit C*: A purple tablet containing LSD.

*Exhibit D*: Two yellow tablets containing LSD.

*Exhibits E and F*: Contained Thioridazine used in the product Mellaril, but the witness did not know what the compound was used for or basic nature of the substance.

*Exhibit G*: Three charred marijuana cigarette butts.

*Exhibit H*: Marijuana contained in a metal cannister.

*Exhibits I and J*: Marijuana plant material and cigarette butts.

*Exhibit K*: A pipe containing marijuana residue.

The above exhibits were admitted in evidence over defendant's objection to the effect (1) no proper foundation had been established; (2) they were illegally seized in violation of defendant's 4th and 14th Amendment rights; and (3) there was no showing as to ownership.

The State then rested and defendant presented no evidence but moved to withdraw Exhibits A, B, E and F from the jury.

The prosecution promptly conceded trial court could only instruct the jury as to marijuana and LSD but suggested the other compounds should go to the jury with a cautionary instruction.

Defendant's motion to withdraw the aforesaid exhibits was first sustained, then overruled.

Thereupon defendant additionally urged submission to the jury of the challenged exhibits would violate the 4th, 5th, 6th and 14th Amendments of the United States Constitution, the Constitution and Statutes of Iowa, and could only lead to prejudicial speculation.

This supplemented motion was also overruled.

In support of a reversal defendant contends the warrantless search and seizure was illegal, and trial court erred in permitting the challenged exhibits to be taken to the jury room.

I. In considering Shea's search and seizure assignment a prefatory review of relevant principles is appropriate.

At the threshold we deal here with the 4th Amendment right to be secure against unreasonable searches and seizures, made applicable to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). See State v. Jackson, 210 N.W.2d 537, 539 (Iowa 1973).

■ It is also axiomatic, any search and seizure must be conducted pursuant to a lawfully issued search warrant, unless attendant circumstances bring it within certain exceptions which excuse compliance with such constitutional restriction. See Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

As this court said in State v. Jackson, *supra*:

"There are three exceptions to this rule generally recognized by the courts. No warrant is necessary when the search and seizure, within prescribed limits, are incident to a lawful arrest; the warrant requirement may be waived by an informed and voluntary consent; and, third, existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so."

■ It is also understood, a peace officer may search an automobile without a warrant when exigent circumstances and probable cause exist. See Coolidge v. New Hampshire, 403 U.S. 443, 459–460, 91 S.Ct. 2022, 2034–2035, 29 L.Ed.2d 564 (1971); State v. Simmons, 195 N.W.2d 723, 724–725 (Iowa 1972); State v. McReynolds, 195 N.W.2d 102, 105 (Iowa 1972).

But the burden of showing exigent circumstances is upon those seeking to come within that exception. See Coolidge v. New Hampshire, *supra*; State v. Osborn, 200 N.W.2d 798, 802 (Iowa 1972); State v. King, 191 N.W.2d 650, 654 (Iowa 1971).

II. The foregoing brings into focus the real issue now before us—did exigent circumstances exist such as to obviate the

necessity of obtaining a warrant before a search of the instantly involved vehicle was effected?

Defendant seemingly concedes there was probable cause in this case but asserts it existed four hours prior to the search. Upon that basis he argues, Helgesen had ample time to obtain a warrant and his failure to do so rendered the later search and seizure illegal, thus making the materials thereby obtained evidentially inadmissible.

On the other hand the State contends requisite probable cause to search Shea and his car came into being only at or about the time Helgesen issued the "stop" order, and exigent circumstances then existed because defendant was in a moving vehicle.

We dealt with the matter of "probable cause" in State v. King, 191 N.W.2d at 653, and there quoted the following from Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959):

> " ' "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, supra, 338 U.S. [160] at 175, 69 S.Ct. [1302] at page 1310 [93 L. Ed. 1879]. Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555, 39 A.L.R. 790.' "

See State v. Johnson, 203 N.W.2d 126, 127–128 (Iowa 1972).

In determining whether probable cause exists for a warrantless search the Eighth Circuit has held the evidence must be of a *more* persuasive character than is required to support issuance of a warrant. See Turk v. United States, 429 F.2d 1327, 1330 (8th Cir. 1970).

In any event, it is well-settled that when an officer effects a search and seizure, absent a warrant, the probable cause requirements are no less stringent than when he seeks the issuance of a warrant. See Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964).

Mindful of the foregoing it is to us evident mere opportunity (Hines' presence in a drug traffic area), plus likelihood (informant's tip that Hines was a dope peddler) furnished no probable cause for Helgesen to believe Shea's car contained contraband on June 29th at or about 9:15 p. m. See Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 567–568, 91 S.Ct. 1031, 1036–1037, 28 L.Ed.2d 306 (1971).

III. Moreover, a determination as to existence of probable cause can hardly be termed an exact science. Neither can an officer in the field be expected to calculate probable cause at any given moment with mathematical precision. He may have reason to suspect a person possesses contraband, or that such may be found in a given place or vehicle, but probable cause must rise above mere suspicion. See Brinegar v. United States, 338 U.S. 160, 175–177, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949); Clay v. United States, 394 F.2d 281, 284–285 (8th Cir. 1968).

By the same token defendant's argument to the effect Helgesen had time to secure a warrant for arrest of Shea, or search of his car, is deemed to be without substance. As aforesaid there existed no probable cause for issuance of any such warrant at 9:15 p. m. on June 29, 1972. But subsequent observations, coupled with exigent circumstances, did suffice to provide the probable cause essential for a warrantless arrest of Shea and attendant

search of his car at 1:45 a. m. on June 30th. It therefore follows the search was effected under such circumstances as to excuse the officers from obtaining a search warrant. See generally 34 A.T.L.J. 174 (1972); 21 Drake L.Rev. 252 (1972); 17 So.Dak.L.Rev. 98 (1972).

Defendant's first assignment does not entitle him to a reversal.

IV. Next to be considered is Shea's complaint regarding the taking of Exhibits A, B, E and F to the jury room on submission of the case.

At cost of some repetition it is essential we again allude to the factual situation which gave rise to the instant claim.

In this area Stephen Eck testified regarding the tests conducted by him. He was thereby able to state certain exhibits contained LSD and marijuana. On the other hand his testimony as to Exhibits A, B, E and F was to the effect he could not determine the nature of the material so identified or usage thereof. Based thereon defendant voiced his withdrawal motion.

■■■ It is inceptionally evident defendant has procedurally waived any appellate relief on the instant assignment. More precisely he cites no authority whatsoever supporting his position. In that regard this court observed in State v. Fiedler, 260 Iowa 1198, 1202, 152 N.W.2d 236, 239 (1967): " * * * where a defendant on appeal cites no authority in support of errors claimed, we are under no compulsion to entertain the assignment." See also State v. Masters, 171 N.W.2d 255, 258 (Iowa 1969).

We deem it appropriate, however, to review the issue here raised. See Code § 793.18.

■■■ V. As a general rule submission of exhibits to the jury is a matter resting in trial court's sound discretion. See Heth v. Iowa City, 206 N.W.2d 299, 303 (Iowa 1973); McCormick on Evidence, § 217 (2d ed. 1972); 2 Underhill's Criminal Evi-

dence, § 513 at 1291 (Herrick 5th ed. 1956).

Further, on the subject at hand, ABA Standards Relating to Trial by Jury (Approved Draft 1968), § 5.1, states:

"(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room * * * exhibits * * * which have been received in evidence, * * *.

"(b) Among the considerations which are appropriate in the exercise of this discretion are:

"(i) whether the material will aid the jury in a proper consideration of the case;

"(ii) whether any party will be unduly prejudiced by submission of the material; and

"(iii) whether the material may be subjected to improper use by the jury."

■■■ Under existing circumstances we are satisfied it was an abuse of discretion on the part of trial court to allow the controverted exhibits to be taken to the jury room. Manifestly they could not have aided the jurors in properly considering and weighing issues involved in the case.

Trial court actually conceded as much by submitting an instruction to the effect the jury could only consider the marijuana and LSD exhibits in reaching a decision. In other words trial court's position can only be described as self-contradictory.

The question thus to be determined is whether prejudice resulted from the fact the jury had in its possession, during deliberations, those exhibits here in question. In that regard this court has repeatedly held, error such as to constitute a cause for reversal must be prejudicial. See State v. Ware, 205 N.W.2d 700, 704 (Iowa 1973).

After considering carefully all that occurred, it is to us apparent the jurors were

not substantially swayed by presence of Exhibits A, B, E and F in the jury room. Neither could such be reasonably said to have in any way induced the verdict. This means defendant's substantial rights were not adversely affected.

This view finds support in the fact the jury was plainly instructed to consider only the marijuana and LSD as controlled substances. And in that vein the jury is presumed to follow clear instructions given by trial court. See Spencer v. State of Texas, 385 U.S. 554, 562–563, 87 S.Ct. 648, 652–653, 17 L.Ed.2d 606 (1967); State v. Ware, *supra*.

From this flows the conclusion defendant's second assignment is without merit.

Affirmed.