**Thomas PULVER, Petitioner,**

v.

**John CUNNINGHAM, Warden, New York City Correctional Institution for Men, Respondent.**

**No. 74 Civ. 2714.**

United States District Court, S. D. New York.

Sept. 21, 1976.

Lawrence W. Kessler, Hempstead, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for respondent; David L. Birch, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Petitioner, Thomas Pulver ("Pulver"), was convicted after a jury trial in New York State Supreme Court, New York County, of criminal possession of stolen property in the second degree and was sentenced to a one year term of imprisonment. He filed the instant petition for a writ of habeas corpus while incarcerated pursuant to that judgment of conviction. After a review of his *pro se* petition, this Court appointed counsel to represent petitioner for purposes of further proceedings limited to the question of whether tangible evidence and a statement by petitioner were admitted into evidence in violation of petitioner's Fourth Amendment rights.

Memoranda were submitted in support of and in opposition to the granting of the writ by counsel for petitioner and by the Attorney General of the State of New York, respectively. Subsequently, the United States Supreme Court handed down its decision in *Stone v. Powell* and *Wolff v. Rice*, —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). At the direction of the Court, counsel submitted supplemental memoranda concerning the effect of this decision upon the habeas corpus petition. For the reasons hereinafter stated, the petition for a writ of habeas corpus must be dismissed.

The facts underlying the petition are as follows: On March 9, 1970, at about 5:00 P.M., Detectives Jacob and Schumacher of the Safe-Loft and Truck Squad observed petitioner and another man drive up to an apartment building at 302 Mott Street in a Volkswagen bus, remove three cartons from the vehicle and carry the cartons into the building. They could not see any writing on the boxes and they did not know their contents. Apparently, however, the detectives knew that petitioner and his companion occupied apartment 39 on the sixth floor of 302 Mott Street. Shortly after petitioner and his companion carried the cartons into the building, the two detectives entered to

investigate. They went to apartment 39 and Detective Schumacher knocked on the door. Schumacher testified that:

> [Petitioner] opened the door approximately three or four inches. I had my shield in my hand, and I was about to announce myself as a police officer when he shoved the door at me, and I shoved the door back at him trying to get in.

Detective Jacob testified that Schumacher "hit [the door] with force" and called to him for help. By the time Jacob got to the door, petitioner had succeeded in shutting it. Thereupon, Jacob went down the hall to a window and climbed out on the fire escape in the event the occupants of the apartment might try to exit via that route. Schumacher continued knocking at the door. Jacob testified that he, then, heard a window in the apartment opening and saw the three cartons jettisoned from the window. While he proceeded to retrieve the cartons, Schumacher continued to knock at the door. When Jacob returned, he and Schumacher were admitted to the apartment. Petitioner was read his *Miranda* rights and one of the detectives asked why he had thrown the boxes, which contained three adding machines, out the window. He replied, "They are the only things that have serial numbers."

The state trial court held separate hearings on petitioner's motion to suppress the tangible evidence and the statement. The state trial judge denied the motion to suppress the three cartons and their contents, holding that they had been abandoned and that there was no search or seizure. The court stated:

> It is quite clear to the Court that at the time these cartons left the premises occupied by these defendants as their apartment, by the active and affirmative ejection of these cartons, they were discarded for the main and simple reasons, first, that the officers had seen them originally in the hands of the defendants when they brought it [sic] into the building; and secondly, by the fact that the officers were knocking on the door and were denied entrance.

The statement was likewise held to have been voluntarily made and the motion to suppress it was denied.

■ Petitioner contends that the tangible evidence and his statement should not have been received because they were obtained as a result of illegal police conduct. First, he contends that the attempted forcible entry into his apartment was unlawful because it was unsupported by probable cause. Second, he contends that when Detective Jacob positioned himself on the fire escape and Detective Schumacher continued knocking at his door after they were unable to gain entry into the apartment, they blocked all means of egress and had effectively arrested him without probable cause. Petitioner's arguments find support in the state record as a whole. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Fletcher v. Wainwright*, 399 F.2d 62 (5th Cir. 1968); *Commonwealth of Massachusetts v. Painten*, 368 F.2d 142 (1st Cir. 1966). However, the role of a federal court in reviewing claims of Fourth Amendment violations after *Stone v. Powell* and *Wolff v. Rice, supra,* is an extremely limited one. Even if this Court were to hold that petitioner's Fourth Amendment rights were violated by the police officers' conduct, the writ could not be granted unless petitioner was also denied a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. *Stone v. Powell, supra,* —— U.S. at ——, 96 S.Ct. 3037.

Petitioner contends that he was denied a full and fair opportunity to litigate his Fourth Amendment claims because some of the facts material to the determination were not revealed until trial. That is, at the suppression hearing there was no testimony concerning the detectives' forcible attempt to keep petitioner from closing the apartment door. This was not revealed until trial, at which time trial counsel moved once again to suppress the evidence. However, this motion was denied by the trial judge.

*Stone v. Powell, supra,* does not provide any standards for determining what consti-

tutes a "full and fair opportunity to litigate." Rather, the Supreme Court left this question open for future development on a case-by-case basis. Nevertheless, the court did provide some guidance by its citation to *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). —— U.S. at ——, n. 36, 96 S.Ct. 3037. In that case, the court had held that the federal court must conduct an evidentiary hearing on habeas corpus when the applicant for the writ was denied a full and fair evidentiary hearing in the state trial court. A full and fair hearing could be denied in six ways:

> ". . . (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." 372 U.S. at 313, 83 S.Ct. at 757.

■ Applying these criteria, this Court would have no difficulty concluding that the state suppression hearing failed to adduce the material facts. However, even assuming that the suppression hearing was not a full and fair *fact hearing* within the meaning of *Townsend v. Sain, supra,* does not mean that petitioner was denied a full and fair *opportunity* to litigate his Fourth Amendment claims. *Stone v. Powell, supra,* cannot be read merely as a reiteration of *Townsend v. Sain, supra.* It is apparent that the opportunity to litigate encompasses more than an evidentiary hearing in the trial court. That is, it includes that corrective action available through the appellate process on direct review of the judgment of conviction. Thus, according to the court in *Stone v. Powell*:

> The question is whether state prisoners—who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts *at trial and on direct review*—may invoke their claim again on federal habeas corpus review.

—— U.S. at ——, 96 S.Ct. at 3049 (emphasis added):

The Court answers this question as follows:

> In sum, we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim *at trial and on direct review.*

—— U.S. at —— n. 37, 96 S.Ct. at 3052 (emphasis added).

Accordingly, it would appear that an applicant for habeas corpus must demonstrate that the state appellate process was in some equivalent way inadequate to correct errors of the trial court.

In the instant case, the record discloses no such inadequacy in the appellate process. Petitioner appealed his conviction to the Appellate Division, First Department, which affirmed unanimously. Leave to appeal to the Court of Appeals was denied. In his brief on appeal, petitioner quoted liberally from the new testimony adduced at trial. He then argued:

> It would seem clear that the attempted warrantless and forcible entry into the apartment for the purpose of seizing the machines was the sole cause of defenestration of the three machines. . . . Accordingly, this evidence, discovered through the terrifying and illegal attempts of the police to break down defendant's door . . . should have been suppressed.

■ Inasmuch as all the material facts were before the state appellate courts on direct review and this Court can find no basis for concluding that the appellate process was otherwise deficient, petitioner has had a full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, the petition for a writ of habeas corpus must be dismissed.

The Court wishes to express its appreciation to appointed counsel who represented petitioner diligently and competently.

Since the effect of *Stone v. Powell, supra,* upon this action poses a significant question of law upon which the Court of Appeals should rule, the Court will issue a Certificate of Probable Cause.

It is so ordered.