**Donald R. HINES, Appellee,**

v.

**Calvin AUGER, Warden, Appellant.**

**No. 76–1273.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 24, 1977.

Decided March 1, 1977.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Richard C. Turner, Atty. Gen., and Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for appellant.

Michael M. Pedersen, Waterloo, Iowa, for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

The State of Iowa has appealed from an order of the district court granting habeas

corpus relief to the petitioner Donald Hines. On January 27, 1976, the petitioner Hines was granted a writ of habeas corpus by the district court on the ground that his state conviction was based in part on evidence seized unreasonably in violation of the fourth amendment. Subsequent to the order of the district court, the Supreme Court held:

> * * * [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067, (1976) (footnotes omitted). In view of *Stone,* we remanded this case to the district court " * * * for the limited purpose of determining whether or not the state of Iowa provided Hines with an opportunity for a full and fair litigation of his fourth amendment claim * * *." *Hines v. Auger,* No. 76–1273 (8th Cir., filed Oct. 12, 1976) (unpublished), slip op. at 2.[1] On remand, the district court held that the petitioner was denied an opportunity to fully and fairly litigate his fourth amendment claim in state court. Specifically, the district court held that Hines was denied an opportunity to fully and fairly litigate his fourth amendment claim on direct review to the Iowa Supreme Court. For the reasons described below, we reverse this determination and remand for further proceedings.[2]

The facts relating to the challenged search and seizure were, in the district court's words, "fully developed" during the suppression hearing and trial in state district court. Indeed, because of this, no evidentiary hearing was held by the district court. After a jury trial Hines, and a companion named Donald Shea, were convicted

---

1. This circuit has applied the *Stone* case retroactively. *See Rigsbee v. Parkinson,* 545 F.2d 56, 57 (8th Cir. 1976) (per curiam).

2. Our disposition does not preclude the petitioner from raising his due process claim on remand.

of possession of a controlled substance with intent to deliver.

The state transcripts reveal the following facts: At approximately 9 p. m. on June 29, 1972, Detective Helgesen of the Waterloo, Iowa Police Department, observed Hines, a white, sitting in a parked car in a predominantly black area of Waterloo, known to have an active drug traffic. Helgesen knew at this time that Hines had been previously arrested and charged with possession of a controlled substance. Helgesen later determined that the car was registered to Donald Shea, whom the detective knew was an acquaintance of Hines. Helgesen had personally arrested Shea previously on drug charges and had reliable information that Shea was currently dealing in large quantities of amphetamines; he had specific information that Shea was selling amphetamines to Nicky Gonzales.

Detective Helgesen emerged from his police car, made inquiry of Hines and determined from Hines that he was waiting to meet a woman. During the course of the inquiry, Helgesen observed a man walk by the vehicle in which Hines was sitting and make an unidentified remark to Hines. This person was known by Detective Helgesen to be Terry Sallis, whom Helgesen knew from reliable information was a close associate of many known dealers and users of hard narcotics. After Hines explained his presence, Detective Helgesen determined that no reason existed for further detention, and sent Hines on his way.

Approximately fifteen minutes after this contact, Detective Helgesen received information from a reliable informant that a "white guy," whom the informant had just seen in the area, was "deal[ing] in dope." Helgesen stated at the suppression hearing that he believed the informant was referring to Hines because he "was the only white person there."

At approximately 1:45 a. m. on June 30, 1972, approximately four and one-half hours after the initial contact, Hines and Shea were observed together in Shea's car in another area of Waterloo by Detective Helgesen. Hines parked the car in the vicinity of the Music Box Tavern, known to Detective Helgesen as a center for the distribution of soft and hard narcotics, and Hines and Shea walked down the street and sat on a ledge opposite the tavern.[3] Approximately fifteen minutes later, Hines and Shea were observed hurrying into the tavern. Shortly thereafter, Hines and Shea left the tavern in the company of Gonzales. Helgesen then instructed Detectives Dolan and Ames to stop the Shea car and, after an erratic move, the Shea car was stopped. Hines and Shea were frisked for weapons. Detective Helgesen thereupon shined a flashlight into the car and observed a plastic vial containing what appeared to be marijuana cigarette butts. Hines and Shea were then placed under arrest and a more complete search produced an assortment of narcotics which was introduced in evidence at the petitioner's trial.

Hines and Shea filed a joint motion to suppress the contraband which was obtained as a result of the search and seizure described above. After a hearing on the motion, at which Detectives Helgesen and Dolan testified, the trial judge denied the motion to suppress, holding " * * * that the detectives had more than probable cause to believe the defendants to be in possession of controlled substances at the time and place in question and more than probable cause to believe that immediate apprehension and search was necessary in view of the apparent pending transaction with Nicky Gonzales."

Shea appealed his conviction to the Iowa Supreme Court claiming that probable cause existed at the time of the initial stop of Hines. Shea argued that the police had ample opportunity during the intervening four and one-half hours to obtain a warrant and therefore the warrantless search and seizure were unreasonable. The Iowa Supreme Court affirmed Shea's conviction,

---

**3.** An automobile owned by Nicky Gonzales was also observed by the police in the vicinity of the tavern at this time.

*State v. Shea,* 218 N.W.2d 610 (Iowa 1974), holding as follows:

> \* \* \* [T]here existed no probable cause for issuance of [an arrest or search warrant] at 9:15 p. m. on June 29, 1972. But subsequent observations, coupled with exigent circumstances, did suffice to provide the probable cause essential for a warrantless arrest of Shea and attendant search of his car at 1:45 a. m. on June 30th. It therefore follows the search was effected under such circumstances as to excuse the officers from obtaining a search warrant.

*Id.* at 614–615.

Subsequently, petitioner Hines appealed his conviction to the Iowa Supreme Court arguing, *inter alia,* that no probable cause ever existed for the stop, search or seizure. The Iowa Supreme Court summarily denied his fourth amendment claim, holding:

> In a companion case, *State v. Shea,* 218 N.W.2d 610 (Iowa 1974), we upheld the validity of this particular search and seizure. The pre-trial suppression hearing, by agreement, applied to both defendants. Trial-developed facts leading up to the search were essentially the same in both cases. Our holding in *Shea* controls our ruling with respect to these two issues. We find no error.

*State v. Hines,* 223 N.W.2d 190, 191 (Iowa 1974).

Petitioner Hines argues, and the district court held, that he was effectively denied an adversary hearing in the Iowa Supreme Court on the issue of probable cause in view of that court's reliance on *Shea,* in which the petitioner's companion "seemingly conced[ed]" the issue of probable cause. *See State v. Shea, supra,* 218 N.W.2d at 614. Hines concludes that he was thus denied an opportunity for full and fair litigation of his fourth amendment claim in state court. We cannot agree with this contention.

The mandate of the *Stone* case is that federal habeas review is precluded where the state courts have provided the accused an *opportunity* to fully and fairly air his or her fourth amendment claim. *See*

*Denti v. Commissioner of Correctional Services,* 421 F.Supp. 557, 559 (S.D.N.Y.1976); *Pulver v. Cunningham,* 419 F.Supp. 1221, 1224 (S.D.N.Y.1976). The emphasis of *Stone* is on the *opportunity* for full and fair litigation, not upon the fullness or fairness of the litigation. *Stone v. Powell, supra,* at 489–494, 96 S.Ct. at 3049–3051; *Denti v. Commissioner of Correctional Services, supra,* 421 F.Supp. at 559. This construction conforms generally to the Court's overriding concerns for finality in state criminal proceedings and comity between state and federal courts, and specifically to the notion, expressed by Mr. Justice Powell in *Schneckloth v. Bustamonte,* 412 U.S. 218, 269, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell J., Concurring), that federal courts should not reexamine state court determinations in "grey, twilight area[s]" of fourth amendment law. The only indication in *Stone* as to what constitutes an opportunity for full and fair litigation is the Court's citation of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). *See Stone v. Powell, supra,* at 494, 96 S.Ct. at 3052 n. 36. In *Townsend* the Court held that a federal court must conduct an evidentiary hearing on a habeas petitioner's claim when the petitioner was denied a full and fair evidentiary hearing in the state trial court. The court said in *Townsend* that a full and fair hearing could be denied in the following ways:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313, 83 S.Ct. at 757.

We hold that Hines was provided an opportunity to fully and fairly litigate

his fourth amendment claim in both the state district court and the state supreme court.

In state district court, on September 21, 1972, Hines and his confederate Shea were afforded a lengthy suppression hearing at which the relevant facts surrounding the stop, arrest, search and seizure were fully aired. During both the suppression hearing and the trial, the petitioner was afforded, and indeed took advantage of, a full opportunity to cross-examine Detectives Helgesen and Dolan. The state trial judge admitted the seized evidence, holding specifically that the stop, search and seizure were justified by probable cause and exigent circumstances.

Hines was also afforded an opportunity to fully and fairly litigate his fourth amendment claim in the Iowa Supreme Court.[4] He *was* afforded an adversary proceeding in that court. His brief in the Iowa Supreme Court, which is part of the habeas record, asserts that probable cause did not exist to support the stop, arrest and search of Hines and the search of the automobile.[5] It is true that the Iowa Supreme Court summarily rejected this claim, citing its own disposition in State v. Shea, supra, 218 N.W.2d 610. However, in the Shea case,

the Iowa Supreme Court explicitly stated that probable cause and exigent circumstances justified the warrantless arrest and search of Shea as well as the warrantless search of the automobile. *Id.* at 614–615. Although the Iowa Supreme Court noted in the *Shea* opinion that Shea "seemingly conced[ed]" the existence of probable cause, its finding of probable cause was independently made and was necessary to the disposition of that case. There is every indication that the Iowa Supreme Court relied on the probable cause finding in *Shea* as dispositive of Hines' appeal and the implication is clear that it determined that there was probable cause to arrest and search Hines and search the automobile.

Furthermore, we discern no deficiency in the state court proceedings which would require a habeas hearing under *Townsend v. Sain, supra,* 372 U.S. at 313, 83 S.Ct. 745.[6] The merits of the fourth amendment claim were resolved by both the state trial court and the state supreme court. The fact-finding procedure in the state trial court was clearly adequate to afford the petitioner a full and fair hearing especially in view of the lack of any procedural errors by the state trial court and the opportunities afforded to the petitioner to cross-examine the police officers involved.[7] *Cf. Zagarino*

---

4. See Redford v. Smith, 543 F.2d 726, 731 (10th Cir. 1976).

5. The district court's reliance on United States ex rel. Petillo v. New Jersey, 418 F.Supp. 686, 688–689 (D.N.J.1976), is thus misplaced. In Petillo, the petitioners were provided no opportunity to litigate their fourth amendment claim that an affidavit submitted by the police to obtain a warrant was based on perjured evidence. In this case, Hines was given a full opportunity to adduce evidence in state trial court that the arrest, search and seizure were not supported by probable cause. The petitioner was also given the opportunity to argue his fourth amendment claim in the Iowa Supreme Court.

6. Compare Gates v. Henderson, No. 76–2065 (2d Cir., filed Jan. 12, 1977), slip op. at 1352–1361; Curry v. Garrison, 423 F.Supp. 109, 110 (W.D. N.C.1976). In Gates, the Second Circuit held that the state court's failure to develop evidence crucial to the petitioner's fourth amendment claim deprived him of an opportunity to fully and fairly litigate the claim. Specifically, counsel failed to object on fourth amendment

grounds, the state court failed to make findings of fact and conclusions of law and also failed to develop crucial evidence relevant to the petitioner's objections. Neither of these grounds is available to petitioner Hines. The state trial court made explicit findings of fact and conclusions of law on the petitioner's motion to suppress. And there is no claim in this case that evidence relevant to the fourth amendment claim was not developed at the suppression hearing in state court.

7. The district court's determination on remand was in part based upon the following:

In addition, the probable cause determination in Shea * * * depended in part on Shea's late night rendezvous with Hines, whom the Iowa Supreme Court found to be the man an informant said was "dealing in dope." This finding is contrary to the record and [is] rejected by this court.

Hines v. Auger, No. 75–2014 (N.D.Iowa, filed Jan. 24, 1977), slip op. at 2.

*v. West,* 422 F.Supp. 812, 820 (E.D.N.Y. 1976). There is no allegation of newly discovered evidence. That the material facts were adequately developed at the state-court hearing cannot be disputed in view of the district court's finding that further evidentiary development was unnecessary. The only *Townsend* criterion which has arguable relevance is the requirement that " * * * the state factual determination [must be] fairly supported by the record as a whole". *Townsend v. Sain, supra,* 372 U.S. at 313, 83 S.Ct. at 757. However, though we might disagree as to the merits of the petitioner's claim were we sitting as an appellate court of first resort, we construe *Stone* to mandate that we not second-guess our state brethren in cases such as this which present murky questions of fourth amendment probable cause. *See Stone v. Powell, supra,* at 489–495, 96 S.Ct. 3049–3051; *Schneckloth v. Bustamonte, supra,* 412 U.S. at 269, 93 S.Ct. 2041. (Powell, J., Concurring).

The judgment of the district court is reversed and the case is remanded for further proceedings consistent with the views expressed in this opinion.

The transcript of the suppression hearing discloses the following colloquy:

Q [Prosecutor Dutton]: And were you sure that he [the unidentified informant] was referring to one and the same person as the defendant in this case, Donald Hines?

A [Detective Helgesen]: We assumed so. [He] was the only white person there. We had remained there around that block for the 15 minutes after he left and there, was none other we had seen. Like I said, we didn't go into detail with him because it was vague and he couldn't really tell us.

The district court improperly impugned the inferences which the state courts drew from this testimony. The inferences flowing from such testimony are certainly within the "grey, twilight area" of which Mr. Justice Powell spoke in *Schneckloth v. Bustamonte,* 412 U.S. 218, 269, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and the state determination must be paid deference under *Stone.*