**STATE of Iowa, Appellee,**

v.

**Jerry Lee GILLESPIE, Appellant.**

**No. 99–1514.**

Supreme Court of Iowa.

Nov. 16, 2000.

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).

Timothy McCarthy II of McEnroe, McCarthy & Gotsdiner, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney Gener-

al, and Alan M. Wilson, County Attorney, for appellee.

LAVORATO, Chief Justice.

The defendant, Jerry Lee Gillespie, appeals from the judgment and sentence entered upon his conviction of receipt of a precursor substance with intent to use such substance to manufacture a controlled substance. *See* Iowa Code § 124B.9(2) (1997). He challenges a district court ruling denying his motion to suppress evidence seized following a search of his vehicle. We conclude that, because there was no probable cause for the search, the district court erred in denying the motion. We reverse and remand.

## I. Facts.

On June 17, 1998, at approximately 12:30 a.m., officer Chad Butler was on patrol for the Seymour Police Department in Wayne County, Iowa. He was patrolling the area around an anhydrous ammonia facility owned by Fowler Elevator. Butler knew there had been at least four anhydrous thefts at the facility during the month of June. Because of his experience with drug trafficking, Butler was aware anhydrous ammonia was used in the production of the controlled substance, methamphetamine.

As he was driving, Butler saw headlights shining to the east. The source of the headlights was stationary and appeared to Butler to be located on the road near the entrance to the plant. Although Butler could not see any vehicle, he did notice that the lights were shining on the trees to the east and not on the tanks located at the facility. The only structures in the area are the anhydrous ammonia tanks. Pasture and cornfields surround the facility. Butler knew no employees would be there at that time of the morning and could think of no good reason why someone would be there at that time.

Upon seeing the headlights, Butler approached the area to investigate. Thereafter, Butler saw a vehicle leave the area traveling east at a high rate of speed. Butler pursued the vehicle, hoping to view its license number. He wanted to verify if, in fact, an employee may have been at the plant for some reason.

Butler reached speeds of at least seventy miles per hour. He continued pursuing the vehicle as it turned south on level B county road 250. At this point, Butler was close enough to determine the vehicle was a pickup truck. Up to this point, Butler had not activated his vehicle's siren nor its flashing lights because he was concerned that the pickup would accelerate even more, and he would have no chance to get a plate number or catch up with the vehicle.

The pickup continued southbound until it reached Edison, a county road that runs east and west. The pickup turned west on Edison and slid around a corner. At one point in the slide, the entire rear end of the pickup had slid around.

The pickup continued westbound after coming out of the slide and then south on county highway S–60 with Butler in pursuit. Upon entering S–60, Butler activated his vehicle's flashing lights. Butler saw the pickup do a U-turn on S–60 and then proceed west on county road Birch. The pickup pulled over and stopped just onto Birch.

It was not until the last thirty seconds of the pursuit that Butler finally activated the flashing lights. Once the lights were activated, the pickup traveled approximately one-quarter of a mile to a mile before stopping. Before activating the flashing lights, Butler made no other attempt to pull the pickup over or indicate to the driver that Butler was in fact a police officer. For example, Butler neither used his vehicle's siren nor its loudspeaker, though his police cruiser was equipped with both.

Butler approached the pickup and discovered Jerry Lee Gillespie and a female companion inside. Butler determined that the two were from Des Moines. Butler asked Gillespie what they had been doing at the facility. Gillespie said they were not at the facility. In response to Butler's questions about Gillespie's driving, Gillespie said a vehicle had run them off the road near the facility, and he thought Butler's vehicle might have been that vehicle. Gillespie also told Butler that he and his companion were headed to Worthington, Missouri. According to Butler, if Gillespie were indeed going to Worthington, Missouri, he was headed in the wrong direction.

Butler issued Gillespie a citation for careless driving to which Gillespie later pleaded guilty. Pursuant to the citation, Butler and Wayne County deputy sheriff David M. Lewis (who had been called to the scene as backup for Butler) searched the pickup. They found four lithium batteries, twenty bottles of pseudoephedrine, a set of scales, two glass tubes, and aluminum foil in the passenger compartment. They also found a three-gallon Spartan brand canister in the bed of the pickup. (Lithium batteries and pseudoephedrine are precursors for the manufacture of methamphetamine.)

Deputy Lewis thereafter returned to the anhydrous ammonia facility and found footprints matching footwear worn by Gillespie and his companion. Along one of the roads involved in the pursuit, Butler and Lewis also recovered a three-gallon Spartan canister containing anhydrous ammonia that matched the canister found in the pickup truck.

## II. Proceedings.

The State charged Gillespie in a two-count trial information with (1) receipt of a precursor substance with intent to use such substance to manufacture a controlled substance (count I) and (2) possession of methamphetamine (count II). *See* Iowa Code §§ 124B.9(2), 124.401(5). Later, the State amended the trial information by substituting for count I the charge of possession of analogs of methamphetamine capable of producing more than five grams of methamphetamine. *See* Iowa Code § 124(1)(b)(7). The State also alleged the amended two counts as second offenses. *See* Iowa Code § 124.411.

Gillespie thereafter filed a motion to suppress the evidence the police obtained in searching the pickup. At the hearing on the motion at which Butler testified to most of the foregoing facts, Gillespie acknowledged that a search incident to citation was legal under Iowa law but argued that in this case there was no basis for the stop. He further argued that, because there was no basis for the stop, the stop and subsequent search were illegal. Additionally, Gillespie reserved the right to raise the constitutionality of the search incident to citation at a later time pending resolution of *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998).

The district court denied the motion. The court ruled that Gillespie's careless driving gave Butler sufficient reason to stop the pickup, and the subsequent search was lawful as a search incident to citation.

Meanwhile, the United States Supreme Court determined in *Knowles* that the issuance of a citation in lieu of an arrest does not, in and of itself, provide officers authority to conduct a full search of an automobile. The Court held that the "search incident to citation" under the circumstances of the case violated the Fourth Amendment to the Federal Constitution and refused to create a "bright line rule" permitting such searches. *Knowles*, 525 U.S. at 119, 119 S.Ct. at 488, 142 L.Ed.2d at 499.

Gillespie filed a motion requesting the district court to reconsider its ruling in light of *Knowles*. At the hearing on the motion, the State argued that *Knowles* was inapplicable to this case because there was probable cause for the search. The State also argued that the exclusionary rule

should not apply because the two officers were acting in good faith based on the current status of Iowa law at the time, which allowed a search incident to a citation.

Gillespie argued that the good-faith exception did not apply. He further argued that probable cause for the search was lacking because police officers are bound by the true reasons for their stop and search. In this case, Butler testified that he searched Gillespie's pickup pursuant to a citation issued to him. The State asserted that the inquiry should not focus on what the officer believed at the time of the stop and search, but rather should focus on "whether, under the totality of the circumstances, probable cause existed."

Relying on *Knowles,* the district court ruled that the search could not be upheld as one incident to a citation. The court further ruled that, although there were grounds for the stop, there was no probable cause to search. The court based this ruling on the fact that at the time of the search Butler did not believe there was probable cause for the search and instead searched the car only in conjunction with the issuance of the citation. Nevertheless, the district court refused to reverse its prior ruling and suppress the evidence. The court ruled that, while the search was unlawful, the fruits of the search were still admissible pursuant to the good-faith exception to the exclusionary rule.

The State then amended count I to reinstate the charge of receipt of a precursor substance. Following the amendment, the district court found Gillespie guilty in a trial based on stipulated minutes. Later, the district court sentenced Gillespie to an indeterminate term of ten years and fined him $5000.

## III. Issues.

Gillespie continues to argue on appeal that, because the challenged evidence was obtained by virtue of a search incident to a citation, such evidence must be suppressed pursuant to *Knowles*. He also argues that

the search cannot be justified on the basis of probable cause because Butler did not rely on this ground for the search. Finally, he challenges the district court ruling that the challenged evidence was still admissible pursuant to the good-faith exception to the exclusionary rule.

The State concedes that the search here could not be sustained as one incident to citation. We therefore give that issue no further consideration.

The State does contend, however, that the challenged evidence is admissible because the officers conducted their search in objective, good-faith reliance on (1) the search-incident-to-citation statute and (2) appellate decisions of this state, which at the time of the search, had upheld the constitutionality of the statute. *See Illinois v. Krull,* 480 U.S. 340, 359–60, 107 S.Ct. 1160, 1172, 94 L.Ed.2d 364, 381 (1987) (holding that, if police officer relied in objectively good faith upon a state statute authorizing search, evidence seized in the search should not be excluded at trial); *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677, 698 (1984) (holding that, if a police officer relied in objectively good faith upon a search warrant in making a search, the evidence seized in the search should not be suppressed).

 We recently rejected the good-faith exception to the exclusionary rule in *State v. Cline,* 617 N.W.2d 277, 283, 293 (Iowa 2000). We did so under article I, section 8 of the Iowa Constitution, which protects persons from unreasonable searches and seizures. *Id.* at 293. Gillespie challenged the search under that provision as well as under its federal counterpart, the Fourth Amendment to the Federal Constitution.

While the good-faith exception might save the challenged evidence seized in a search incident to citation from exclusion under federal law, the exception does not save such evidence under Iowa law. *See*

*id.* The district court erred in concluding otherwise.

That leaves for our consideration the probable-cause issue.

## IV. Probable Cause for the Search and Seizure.

■ Like article I, section 8 of the Iowa Constitution, the Fourth Amendment to the Federal Constitution also protects persons from unreasonable searches and seizures. *See* U.S. Const.amend. IV; Iowa Const. art. I, § 8. The Fourth Amendment protection against unreasonable searches and seizures applies to the states through the Fourteenth Amendment to the Federal Constitution. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). Any evidence obtained in violation of the Fourth Amendment is generally inadmissible, no matter how relevant or probative the evidence may be. *State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996).

Because the language of article I, section 8 of the Iowa Constitution is nearly identical to the Fourth Amendment, we generally deem these two provisions to be identical in scope, import, and purpose. *See Cline*, 617 N.W.2d at 281, 284. One notable exception, of course, is the good-faith exception. *See id.* at 293. Our discussion of probable cause here will focus on the Fourth Amendment. Nevertheless, what we say is equally applicable to Gillespie's claim under the Iowa Constitution.

■■ We review de novo the ultimate conclusion a district court reaches on a motion to suppress concerning Fourth Amendment issues. *See State v. Heminover*, 619 N.W.2d 353, 358 (Iowa 2000). A district court's fact-findings on such a motion are binding on the appellate courts if those findings are supported by substantial evidence. *See id.*

■ The search here was a warrantless one. For that reason, the search is per se unreasonable unless it falls within a recognized exception. *Cline*, 617 N.W.2d

at 282. One of those exceptions exists when there is probable cause for the search, and exigent circumstances necessitate an immediate search. *Id.* The State must prove the exception by a preponderance of the evidence. *Id.*

The district court believed probable cause for the search and seizure here did not exist because Butler testified he did not feel he had probable cause to search. The district court pointed out that, in response to questioning at the suppression hearing, Butler consistently indicated that his reasons for stopping the pickup were the careless driving that he observed and that he believed he could search the vehicle incident to the citation for such driving.

Additionally, the court explained:

While [Butler] indicated that his desire to search the vehicle was based on the suspicious activity he had previously witnessed, he did not reach the conclusion at the time of the search that that activity provided any independent basis for conducting the search. Since he did not reach that conclusion at the time, this court cannot declare that the facts could have warranted such a conclusion, then justify the search as if the officer had reached such a conclusion when in fact he had not. Such a ruling could encourage searches in borderline situations in which the officer did not truly feel there was probable cause, but conducted a search anyway in the hopes that a court would justify the search after the fact. *This court cannot agree with the assertion of the State that officer Butler's belief was irrelevant.*

(Emphasis added.)

In short, according to the district court, the test for probable cause to search is a subjective one: whether the officer believed he had probable cause.

We rejected such reasoning in *Cline*. There, we said:

The defendant appears to dismiss the State's probable cause argument on the

ground that the officer did not justify the search on the basis of probable cause. [In *Cline*, the officer testified she made the search incident to a citation.] The defendant's focus on the officer's stated reasons for conducting the search is misplaced. The constitutional reasonableness of a search or seizure is determined by an objective standard. Consequently, the legality of a search and seizure under circumstances such as those present here "does not depend on the actual motivation of the individual officer involved." Therefore, the State is not limited to the reasons stated by the investigating officer in justifying the challenged search or seizure.

*Cline*, 617 N.W.2d at 281 (citations omitted) (quoting *Predka*, 555 N.W.2d at 205). We concluded that failure of the police officer to mention probable cause as a reason for her search did not preclude the State from proving the existence of probable cause to uphold the search. *See id.*

■ In short, the test for probable cause to search is not subjective but objective. *See Florida v. Royer*, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 242 (1983) (plurality opinion) (holding that an officer's testimony at the suppression hearing that there was no probable cause and that the search was consensual or based on reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), did not preclude the state from arguing that the search was justified on the basis of probable cause); 2 Wayne R. LaFave, *Search and Seizure* § 3.2(b), at 33–37 (3d ed.1996). As one court aptly explained:

[T]he mere subjective conclusions of a police officer concerning the existence of probable cause is not binding on this court which must independently scrutinize the objective facts to determine the existence of probable cause.... Moreover, since the courts have never hesitated to overrule an officer's determination of probable cause when none exists, consistency suggests that a court may

also find probable cause in spite of an officer's judgment that none exists.

*United States ex rel. Senk v. Brierley*, 381 F.Supp. 447, 463 (M.D.Pa.1974) (citation omitted); *see also United States v. Day*, 455 F.2d 454, 456 (3d Cir.1972) ("Here, the policeman testified that he did not have probable cause to search, and at best was merely suspicious. Of course, we would not consider ourselves bound by a police officer's inability to articulate his conclusions if the facts clearly demonstrated the existence of probable cause....").

A police officer has probable cause to search an automobile

when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include "the sum total ... and the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer[ ]."

■ *State v. Edgington*, 487 N.W.2d 675, 678 (Iowa 1992) (quoting *United States v. Strickland*, 902 F.2d 937, 942–43 (11th Cir.1990)). The determination of probable cause, as the name implies, is based on probabilities and not mere suspicion. *See State v. Shea*, 218 N.W.2d 610, 614 (Iowa 1974).

The exigency requirement is satisfied " 'when the car is mobile ... and the car's contents may never be found again if a warrant must be obtained.' " *Predka*, 555 N.W.2d at 207 (quoting *Edgington*, 487 N.W.2d at 678).

■ Here, Butler, regardless of his motivation, unquestionably had probable cause to stop the pickup because he observed a traffic offense—the careless driving. *See Whren v. United States*, 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 1772, 1774, 135 L.Ed.2d 89, 95, 97 (1996) (holding that the decision to stop an automobile is reasonable for Fourth Amendment purposes "where the police have probable cause to

believe a traffic offense has occurred" regardless of the actual motivation of the officer); *Predka*, 555 N.W.2d at 205 (same). Additionally, exigent circumstances existed because Gillespie's pickup was mobile, and its contents could have been lost if a search warrant had to be obtained.

The more difficult question is whether Butler had probable cause to conduct the subsequent search. On this point, the State contends the following facts support a finding of probable cause to search: (1) Butler saw a vehicle, later determined to be Gillespie's pickup, leaving the anhydrous ammonia facility at 12:30 a.m.; (2) the facility had experienced several thefts in the weeks immediately preceding this event; (3) Butler knew from his drug training that anhydrous ammonia is a common component in the manufacture of methamphetamine—a controlled substance; (4) Gillespie led Butler on a high-speed pursuit; (5) even after Butler signaled Gillespie to stop, Gillespie attempted further evasive action; and (6) once stopped, Gillespie's version of events was not believable. For reasons that follow, we disagree.

The fact that the vehicle was seen leaving at a high rate of speed from an area near the site of several recent thefts does not alone amount to probable cause. *See Cline*, 617 N.W.2d at 283 (holding that the defendant's presence in an area of drug dealing and her flight from the police did not rise to the level of probable cause to believe that the defendant had actually committed a crime). Additionally, there was no evidence that a crime had been committed at the time and that Butler was responding to or investigating an in-progress crime report. Furthermore, before the vehicle fled the area around the facility, Butler saw no one leaving the facility area. Finally, the vehicle's headlights were not even seen pointing to the facility. Had they been, this might have afforded at least some suspicion that the vehicle was involved in criminal activi-ty at the facility at that time of night by assisting in any attempted theft from the facility.

A fair inference from the record is that, except for the final seconds of the pursuit, one can hardly say Gillespie was fleeing from the officer. The hour was late at night on back county roads; Butler did not use his vehicle's flashing red lights, siren, or loudspeaker to identify himself; and until the end of the pursuit, Butler never got close enough to read the pickup's license plate. Given these circumstances, Gillespie's response that he did not realize he was being pursued by a police officer is not only plausible, but likely. Indeed, Butler testified there was no way the people in the pickup could have realized he was a police officer. From Gillespie's perspective, he was simply being pursued by a private citizen, in which case his actions were not indicative of criminal behavior. *See State v. Haviland*, 532 N.W.2d 767, 769 (Iowa 1995) ("We do not know of any case law or other authority which suggests that a private citizen's avoidance of another private citizen as opposed to the police is indicative of criminal behavior.").

As to the final thirty seconds of the pursuit when Butler finally activated his vehicle's flashing lights, the record is not clear to what extent Gillespie was actually attempting to elude Butler. Given the speed Gillespie was traveling, stopping within a quarter of a mile to a mile may not have been unreasonable under the circumstances. One thing is clear, however, Gillespie voluntarily came to a stop after Butler activated the flashing lights. Butler did not have to run Gillespie off the road to stop him.

Finally, the State asserts that Gillespie's version of the events was not believable. The State specifically points out that, when Butler finally stopped the pickup, it was not heading in the direction of Worthington, Missouri, the town to which Gillespie had claimed he and his companion were traveling. Gillespie's story was that earlier a vehicle had run his pickup off the

road, and he thought Butler's vehicle was that vehicle coming back after him for some reason. Although suspicious, Gillespie's story is consistent with his actions of changing directions to avoid this threat.

We also find no inconsistency in Gillespie's statement that he was never at the facility. Butler never testified that he saw Gillespie or his companion near any anhydrous ammonia tanks. In fact, Butler testified he only saw headlights and never saw the vehicle that was near the facility because the large tank on the facility's premises was blocking it.

Clearly, none of these facts alone rise to the level of probable cause justifying the search. However, even when taken together, we conclude the facts do not satisfy the probable-cause requirement.

In *Shea*, we held that mere opportunity—for example, presence in a drug traffic area—plus likelihood—for example, an informant's tip that a particular officer is a drug dealer, does not establish probable cause to believe a vehicle contains contraband. *See* 218 N.W.2d at 614. In the present case, at most there might have been opportunity. If opportunity and likelihood are not enough to establish probable cause, then opportunity alone is surely inadequate.

While there may have been some basis to suspect suspicious activity, we conclude there was not sufficient evidence that could lead a reasonably prudent officer to conclude the pickup contained contraband. While we are not bound by Butler's testimony as to whether probable cause existed, we think that at most the record supports what Butler described as a *suspicion* of criminal activity. Such a suspicion, however, does not rise to the level of probable cause to believe the pickup contained contraband.

## V. Disposition.

The warrantless search of Gillespie's vehicle violated his constitutional rights un-

der the Fourth Amendment to the Federal Constitution and article I, section 8 of the Iowa Constitution because probable cause for the search and seizure was lacking. For this reason, the evidence seized during the search was inadmissible. The district court should therefore have sustained Gillespie's motion to suppress, and its failure to do so constituted error. We therefore reverse the judgment of conviction and sentence and remand for new trial.

**REVERSED AND REMANDED.**

McGIVERIN, S.J.,* participates in place of TERNUS, J., who takes no part.

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).